CITY OF WAKEFIELD *v.* GLOBE INDEMNITY CO.

1. INSURANCE—COMPROMISE AND SETTLEMENT—BAD FAITH IN REFUSING SETTLEMENT OFFER.

It is not bad faith for indemnity insurers' counsel to refuse settlement with the injured party under the *bona fide* belief that they might defeat the action, or probably keep the verdict within the policy limit.

2. SAME—EVIDENCE OF BAD FAITH INSUFFICIENT TO TAKE QUESTION TO JURY.

In an action by a city operating an automobile bus line against the companies carrying its liability insurance for the amount of a judgment against it in excess of the amount of the policy, which it was compelled to pay, on the theory that defendants were guilty of negligence and bad faith in refusing to accept a compromise offer of settlement for less than their liability as recommended by their attorney, evidence *held,* insufficient to warrant submitting to the jury the question of bad faith.

3. SAME—BURDEN OF PROOF.

The burden of proving bad faith on the part of insurers' agent in refusing to accept a compromise offer of settlement rested on plaintiff.

4. SAME—INFERENCES—BAD FAITH.

No inference of bad faith may be drawn from the failure of defendants' agent, while on the stand, to state that he acted in good faith, especially where he was not examined on said subject by plaintiff's counsel.

5. APPEAL AND ERROR—RESERVING DECISION—NEW TRIAL.

Decision on defendants' motion for a directed verdict, which should have been granted, having been reserved as provided for in the Empson act (3 Comp. Laws 1915, § 14568 *et seq.*), and defendants' motion for judgment notwithstanding the verdict for plaintiff having been denied, on reversal of judgment for plaintiff the cause is remanded to the trial court with direction to enter judgment for defendants.

Error to Gogebic; Driscoll (George O.), J. Submitted January 15, 1929. (Docket No. 50, Calendar No. 34,002.) Decided June 3, 1929.

Action by city of Wakefield against the Globe Indemnity Company and others, insurers, for loss suffered through failure of defendants to accept a compromise offer of settlement. From judgment for plaintiff, defendants bring error. Reversed, and new trial granted.

*Harry K. Bay,* for plaintiff.

*M. J. Kennedy,* for defendants.

FEAD, J. Plaintiff city of Wakefield operates an automobile bus line. Defendants carried its liability insurance, under joint policy, in the sum of $10,000 for damages to any one person. Frank Borski was injured by one of the city vehicles, brought suit for damages, defendants assumed the defense, with the city attorney co-operating and attorney of record, and, on trial, Borski recovered judgment for over $15,000, which was affirmed by this court. *Borski* v. *City of Wakefield,* 239 Mich. 656. The city having paid the judgment, defendants reimbursed it in the sum of $10,000 and costs. This suit was brought in tort to recover the balance of the judgment on the claims of (a) negligent defense of the Borski suit by defendants, (b) their failure to exercise reasonable care to effect a compromise of Borski's claim, and (c) their bad faith in refusing settlement.

The claim of negligent defense is that defendants failed to make the point at the Borski trial that the operation of a bus line was *ultra vires* of the city, and, therefore, it was not liable for the injury. Be-

fore the trial, counsel for defendants and for the
city discussed the matter at length with the city offi-
cials. Counsel for defendants wanted to raise the
point, and drafted an appropriate amendment to the
notice under the plea. The city officials objected to
making the defense and acquiesced in its abandon-
ment. We agree with the circuit judge that the
plaintiff is estopped from now claiming negligent
defense in this respect.

Before the trial several propositions of settlement
were suggested to defendants. During the trial,
counsel for Borski, for the city, and for defendants
reached an agreement to compromise the suit for
$4,325, subject to defendants' approval. Defend-
ants refused to settle. The other claims of liability
arise out of such refusal.

The policy required defendants to defend all suits
brought against the insured to recover damages un-
der it, "unless the insurers shall elect to effect set-
tlement thereof," and contained the clause:

"The insurers shall have the exclusive right to
contest or settle any of said suits or claims. The
assured shall not interfere in any way respecting any
negotiations for the settlement of any claim or suit,
nor in the conduct of any legal proceedings, but shall,
at all times, at the request of the insurers, render to
them all possible co-operation and assistance. The
assured shall not voluntarily admit or assume any
liability for an accident, nor incur any expense other
than for immediate surgical relief, nor settle any
claim, except at the assured's own cost."

The issues are of first impression in this State.
But they have been considered and exhaustively dis-
cussed in numerous cases in other jurisdictions. The
authorities are collected in 34 A. L. R. 730, 37 A. L.
R. 1477, 43 A. L. R. 326, and notes.

The courts seem to be unanimous in the opinion, as expressed by direct ruling, recognition, or assumption, that the insurer is liable to the insured for an excess of judgment over the face of the policy when the insurer, having exclusive control of settlement, fraudulently or in bad faith refuses to compromise a claim for an amount within the policy limit. They are also unanimous that the instant form of policy contains no express or implied contract obligation of the insurer to compromise claims, and that an action in assumpsit or on the contract will not lie for the excess of judgment over policy limit. Where the proposition is stated, the great weight of authority holds that the insurer has the option to compromise but no obligation to do so. The exclusive control of settlement in the insurer, however, applies only to the policy limit, as the insured may compromise his own possible liability in excess of that amount. *General Accident, etc., Assur. Corp.* v. *Telephone Co.,* 175 Ky. 96 (193 S. W. 1031, L. R. A. 1917D, 952); *Pickett* v. *Fidelity & Casualty Co.,* 60 S. C. 477 (38 S. E. 160, 629).

In discussing the cases adverse to it, plaintiff's counsel stresses the form of action as bearing upon liability. In many of the cases the form of action is not entirely clear. In *Wisconsin Zinc Co.* v. *Fidelity & Deposit Co.,* 162 Wis. 39 (155 N. W. 1081, Ann. Cas. 1918C, 399), it was in tort; and in *Best Building Co.* v. *Employers' Liability Assur. Co.,* 247 N. Y. 451 (160 N. E. 911); *Mendota Electric Co.* v. *New York Indemnity Co.,* 169 Minn. 377 (211 N. W. 317); *Wynnewood Lumber Co.* v. *Travelers' Ins. Co.,* 173 N. C. 269 (91 S. E. 946), it seems to have been. However, while the distinction between action in contract and in tort is emphasized in the *Douglas Case,* the other courts used general language in stating

their conclusions as to liability, and, in nearly all cases, without discussion of the form of action.

Plaintiff's theory, following *Douglas* v. *United States Fid. & Guar. Co.,* 81 N. H. 371 (127 Atl. 708, 37 A. L. R. 1477), and *Attleboro Manfg. Co.* v. *Frankfort Marine, etc., Ins. Co.,* 153 C. C. A. 377 (240 Fed. 573), may be expressed in a quotation from a note to the *Attleboro Case,* as reported in 17 N. C. C. A. 1068:

"In the event the indemnitor elects to resist such a claim of liability, or to effect a settlement thereof on such terms as it can get, there arises a new, implied contract, supplementing if not superseding the policy of indemnity, and coincident therewith, a self-imposed duty to exercise due care and good faith."

And one from plaintiff's brief:

"This case also proceeds upon the theory that anyone who assumes to perform a service for another is by the common law duty bound to exercise due care and diligence in the performance thereof, especially where the party for whom the service is being performed is precluded from doing anything in his own behalf for his own protection during the performance thereof."

The circuit court submitted the cause to the jury on the ground of ordinary negligence, and plaintiff had verdict and judgment.

Plaintiff's theory overlooks the purport and purpose of the policy provisions regarding control of settlements. The policy amount constitutes a dead line of contractual power, obligation, and duty. The insured pays for protection to that amount only, and the insurer has no obligation to indemnify him in a greater sum. The insurer has no authority to bind insured by compromise in any amount above such

limit, nor to prevent his settling his own possible excess liability as he chooses. Within the policy limit, the insurer has no contract obligation to effect settlement, as the policy contains no promise that it will do so under any conditions or circumstances. Nor within such limit can the insured be injured by any compromise or failure to compromise, as liability to that amount must be paid by the insurer. It seems very plain that the exclusive power to control settlements within the amount of the policy is ceded to the insurer for its sole benefit, to save itself, as far as may be, on account of its engagement to insured. Because of its purpose, the power is to be used according to the judgment and discretion of the insurer, and, therefore, in attempting exercise of the power, it is not performing, or assuming to perform, a legal duty to insured, either express or implied. Without such legal duty, the obligation to use due care in the exercise of the power cannot be imposed by law.

Recognizing the soundness of the weight of authority in this respect, some of the commentators have suggested that the insurer should not be held liable even for bad faith in refusing settlement, because the insured may fully protect himself by compromising his own possible liability over the policy amount. However, we think the rule adopted by the authorities should be followed in the interest of uniformity, and may be sustained in principle. Prohibition against fraud or bad faith is imposed by law upon every legal relationship, is a part of every lawful grant of power, and it is not necessary to contract for it. The power to control settlements having been granted to insurer for the purpose of its own protection under the policy, it is bound to use the power in good faith for that purpose.

The insured has no obligation to compromise his

own possible liability, but may rest upon the policy, the promise to indemnify in a certain amount, the duty of insurer to conduct the defense and to use its discretionary power of settlement in good faith. The use of the power in bad faith, for improper motives, or for other purpose than that for which it was granted, would constitute a fraud upon insured and be actionable if injury results to him therefrom. See *Chambers* v. *Chambers,* 207 Mich. 129.

The practical difficulties and effect of the rule suggested by plaintiff are apparent. They have been set out at some length in *Best Building Co.* v. *Employers' Liability Assur. Co., supra,* and need not be repeated.

We think the rule adopted by the great weight of authority is in harmony with the contract of the parties and should be followed. Defendants are not liable to plaintiff for refusal to compromise Borski's claim unless the refusal was in bad faith.

The more perplexing questions are, What showing is necessary to make out a case of bad faith on the part of the insurer in refusing to settle? and whether the testimony raises a jury issue thereon. Upon the record here, we are not concerned with whether a finding of bad faith would have been against the great weight of the evidence. The question is whether the testimony most favorable to plaintiff raises an issue of fact.

It is not bad faith if counsel for the insurer refuse settlement under the *bona fide* belief that they might defeat the action, or, in any event, can probably keep the verdict within the policy limit, *Stowers Furniture Co.* v. *American Indemnity Co.* (Tex. Civ. App.), 295 S. W. 257; or have a "fighting chance" to win, *New Orleans, etc., R. Co.* v. *Casualty Co.,* 114 La. 154 (38 South. 89, 6 L. R. A. [N. S.] 562). A mistake of judgment is not bad faith. *Mendota Elec-*

*tric Co.* v. *New York Indemnity Co.,* 175 Minn. 181 (221 N. W. 61). On a prior review of the last case, reported in 169 Minn. 377 (211 N. W. 317), the court said:

"Good faith and fair dealing are correlative obligations and the insurer owes to the insured some duties in the matter of the settlement of claims covered by the policy, *Brassil* v. *Maryland Cas. Co.,* 210 N. Y. 235 (104 N. E. 622, L. R. A. 1915A, 629), and *where the insured is clearly liable* and the insurer refuses to make a settlement, thus protecting the insured from a possible judgment for damages in excess of the amount of the insurance, the refusal must be made in good faith and *upon reasonable grounds for the belief that the amount required to effect a settlement is excessive.* We think this conclusion is in accord with the principles stated in the cases cited and that no injustice to the insurer will be done if they are adopted as guides to the courts."

In *Wisconsin Zinc Co.* v. *Fidelity & Deposit Co., supra,* the court said:

"While the defendant had the right to consult what it deemed to be its own interest in making a settlement, it could not abuse the power vested in it and recklessly and contumaciously refuse to settle if it was apparent that in all reasonable probability its conduct would not only result in damage to the plaintiff but also in loss to itself."

Where, to induce the insured to pay part of a settlement amount, the insurer represents to him that trial will result in a judgment which would cause him a greater loss than settlement, and, if he does not pay, the insurer will permit the action to proceed to judgment, the insurer acts in bad faith. *Brown & McCabe, Stevedores, Inc.,* v. *London Guar. & Acc. Co.,* 232 Fed. 298.

Undoubtedly, the insurer does not act in bad faith

if it refuses settlement in the honest belief that it has a fair chance of victory, or of keeping the verdict within the policy limit, or, upon reasonable grounds, that the compromise amount is excessive, or if it has legal defenses, as yet undetermined by a court of last resort, which fairly seem applicable, as the question of seasonable notice to the city of the claim of injury may have been in the instant case. There may be other *bona fide* reasons for refusal to compromise. On the other hand, arbitrary refusal to settle for a reasonable amount, where it is apparent that suit would result in a judgment in excess of the policy limit, indifference to the effect of refusal on the insured, failure to fairly consider a compromise and facts presented and pass honest judgment thereon, or refusal upon grounds which depart from the contract and the purpose of the grant of power, would tend to show bad faith.

Good or bad faith is a state of mind. Of necessity, it must be determined from proof of conduct, except as the owner of the mind discloses its operations. Defendants, being corporations, could act only through agents, whose state of mind is that of the defendants.

Defendants' principal representative was K. A. Campbell, of Minneapolis, acting for Fred L. Gray Company, general agents. At the Borski trial they were represented by one Selb, an adjuster, and B. H. T. Burritt, the attorney who conducted their defense.

When the trial was nearly finished, after Borski's medical witnesses had testified, and after Mr. Burritt had talked with witnesses for the defense, he came to the conclusion that the case was hopeless, made advances to Borski's attorney for settlement, and agreed with them on a compromise in the sum of $4,325 subject to defendants' approval. Attor-

neys for the city participated in the negotiations. Mr. Burritt wired Gray company, stating:

"This is a dangerous case. Stop. One hundred per cent. disability and may be permanent. Stop. Medical testimony strong. Stop. Do not submit counter offer as we may finish case today. Stop. I advise settlement."

The telegram came to Mr. Campbell, who called Selb by long-distance telephone and instructed him to tell Mr. Burritt the proposition was declined.

The testimony showed that Borski was 35 years of age, had been strong and healthy before the accident, earning $5.25 per day. At the time of trial he was emaciated, totally disabled, had undergone great pain and suffering, and the physicians testified his recovery was doubtful and he might go insane. In the report of the case, which was introduced in evidence, this court held that, in view of the showing, the verdict was not excessive.

Mr. Campbell was a witness on the trial of the case at bar and testified at length. He gave no reason for refusing the settlement. Conceding that the record indicates that he could have had just cause for not approving the compromise, it is mere speculation, not evidence, to guess his probable reasons when, having had full opportunity to disclose them on the trial, he failed to do so. Whatever of good faith may be attributed to him by such speculation is more than offset by the fact that the jury was entitled to draw the inference that, if his action had been due to justifiable reasons, he would have said so on the stand, and that, failing to state the reasons, he had no legitimate excuse for his action.

The only evidence of the state of mind of any of defendants' agents was that of Mr. Burritt, whose opinion it was that Mr. Borski would surely recover,

would obtain a large verdict, and that settlement was advisable and the amount reasonable. Mr. Burritt's knowledge of the fact was defendants' knowledge, 6 C. J., p. 638, and they were bound to take into account what he knew. *Stowers Furniture Co. v. American Indemnity Co., supra.*

Where there is any evidence whatever of bad faith, the issue is for the jury. Mr. Burritt's testimony and Mr. Campbell's silence were evidence that the defendants acted in bad faith and required submission of the issue to the jury.

A number of other questions are presented, only the following of which may arise upon a new trial and require discussion:

Whatever privilege may have attached to Mr. Burritt's telegram to Gray company is waived if defendants make the claim that Mr. Campbell acted in good faith in denying compromise. Any knowledge he had of the case would be open to inquiry and proof.

Evidence of suggestions and propositions of compromise made to defendants' representatives by others than Borski was admitted, doubtless upon the issue of failure to exercise reasonable diligence to effect a settlement. Upon the issue as here limited, such evidence would not be competent unless the propositions were made by Borski or his authorized agents, whose authority was known or demonstrated to defendants. The latter cannot be charged with bad faith in refusing to give consideration to rumors or unauthorized propositions.

Judgment is reversed, and new trial ordered, with costs.

MCDONALD and POTTER, JJ., concurred with FEAD, J.

Sharpe, J. The rule of law applicable to the issue here presented is, I think, correctly stated by Mr. Justice Fead as follows:

"It is not bad faith if counsel for the insurer refuse settlement under the *bona fide* belief that they might defeat the action, or, in any event, can probably keep the verdict within the policy limit. * * * A mistake of judgment is not bad faith."

It is supported by the decisions in the cases cited by him. The quotation from *Wisconsin Zinc Co.* v. *Fidelity & Deposit Co.,* 162 Wis. 39 (155 N. W. 1081, Ann. Cas. 1918C, 399), is, I think, worthy of repetition:

"While the defendant had the right to consult what it deemed to be its own interest in making a settlement, it could not abuse the power vested in it and recklessly and contumaciously refuse to settle if it was apparent that in all reasonable probability its conduct would not only result in damage to the plaintiff but also in loss to itself."

But I do not concur in the conclusion reached by him that the evidence required the submission to the jury of the question, Did Mr. Campbell act in bad faith in declining to accept the offer of settlement?

In the ordinary affairs of life, many persons are at times called upon to decide matters in which the rights of others are involved. When such rights are not fixed by statute or court decision, there is but one criterion by which their actions in doing so should be judged, and that is: Did they exercise an honest judgment? As to most persons, it is to be expected that in making such decision they will be more or less influenced by their personal interest in the matter.

Corporations act through their officials. When the offer of settlement in the *Borski Case* was sub-

mitted to Mr. Campbell at his office in Minneapolis
by the telegram of Mr. Burritt, it was up to him to
accept or reject it as his judgment, in view of all the
facts then known to him, should dictate. He was
under no legal obligation to do so. Let us try to
place ourselves in his position at the time he was
called upon to make decision. He knew that the
offer, if accepted, called for the payment of $4,325,
and that his clients were liable to indemnify the city
to the amount of $10,000; that, if he should refuse
to accept, his clients incurred the risk of paying an
additional $5,675; that the amount of damages which
the plaintiff might be awarded was not the only
question in issue; that two defenses were being in-
terposed, and, if either of them should be sustained
as a matter of law, plaintiff could not recover in
any amount; and that, on a former trial, a verdict
had been directed in favor of the city and after-
wards set aside and a new trial granted. He also
had the right to consider the improbability of plain-
tiff's attorneys' offering to accept $4,325 in settle-
ment if they felt at all certain of ultimate success,
in view of the information conveyed to him in the
telegram he had just received from Mr. Burritt that
"This is a dangerous case. One hundred per cent.
disability and maybe permanent." Possessed of
this knowledge, and being required to make immedi-
ate decision, can it be said that an inference may be
drawn therefrom that he did not exercise an honest
judgment or act in good faith in refusing to accept
the offer made? I think not.

One of the legal questions presented involved the
claim of the city that it was operating its bus line
in a governmental capacity, and therefore not lia-
ble. In disposing of the case in this court, Mr. Jus-
tice McDONALD, speaking for the court, said: "This
precise question has never been considered by this

court.'' Counsel for the defendant cited several decisions of courts in other jurisdictions which supported its claim in this respect. Mr. Campbell's declination of the offer was but an expression of confidence on his part that the legal defenses interposed were well taken. Surely it cannot be said to have been actuated by a lack of honesty or fair dealing towards the city, amounting to what, in law, is denominated ''bad faith,'' particularly in view of the fact that the amount of the offer, $4,325, must be increased by the verdict of the jury to more than $10,000 and sustained in such amount before any liability on the part of the city could attach.

Stress is laid upon the fact that Mr. Campbell as a witness did not disclose his reason for refusing the settlement. He was the first witness called by plaintiff's counsel, and was afterwards recalled by them. The purpose of his examination, as disclosed by the record, was to establish the fact that the attorneys for the indemnity companies assumed and had actual charge of the defense of the case. No suggestion was made during his examination by plaintiff's counsel that he had acted in bad faith in refusing to settle. Doubtless, this accounts for the omission of defendants' attorney to question him concerning his action in that respect. If, from a consideration of the entire evidence, no inference of bad faith may be drawn, his failure to state that he acted in good faith cannot, under the circumstances attendant upon his examination, be said to negative the presumption that he so acted. Upon the plaintiff rested the burden of proving that his refusal to settle was actuated by bad faith, and, unless the proof submitted by plaintiff bearing thereon was of sufficient weight to warrant submission of the question to the jury, no obligation rested upon him to make denial thereof.

The journal entry of the verdict and judgment, after stating the verdict of the jury, contains the following:

"Thereupon the motion of the defendants for a directed verdict in their favor reserved by the court under Act No. 217 of the Public Acts of 1915 is hereby denied, and judgment is hereby entered upon the verdict of the jury."

The judgment follows. Error is assigned upon the overruling of the motion for a directed verdict and upon the refusal of the court to enter judgment notwithstanding the verdict.

The judgment is reversed and set aside, with costs to appellants, and the cause remanded to the trial court with direction to enter a judgment for the defendants.

NORTH, C. J., and FELLOWS, WIEST, and CLARK, JJ., concurred with SHARPE, J.