**Paul O. JACKSON and Ralph D. Jackson, individually and doing business as East Tawas Recreation, Plaintiffs-Appellants,**

**v.**

**SAINT PAUL–MERCURY INDEMNITY COMPANY et al., Defendants-Appellees.**

**No. 15508.**

United States Court of Appeals
Sixth Circuit.

Dec. 12, 1964.

As Amended Feb. 12, 1965.

---

Malcolm M. Heber, Royal Oak, Mich., Barry K. Branch, Royal Oak, Mich., on the brief for appellants.

Robert E. Plunkett, Detroit, Mich., Ward, Plunkett, Cooney, Rutt & Peacock, and Charles T. McGorisk, Detroit, Mich., on the brief for appellees.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and PRETTYMAN, Senior Circuit Judge.[1]

HARRY PHILLIPS, Circuit Judge.

Appellants owned and operated a bowling alley and bar, doing business as a partnership. On April 25, 1956, an Indian named LeRoy Jones became intoxicated at appellants' bar. Later in the day this intoxicated customer became involved in an altercation with one Michael Pinter, an employee of the Holland Hotel, which resulted in the loss of sight in one of Pinter's eyes. In accordance with M.S.A. §§ 18.993(1)–18.993(7) [Comp. Laws Mich. 1948, § 436.22; Pub.Acts, Mich. 1933, Ex.Sess., No. 8] appellants carried a policy of liquor liability insurance, issued by the St. Paul-Mercury Indemnity Company, one of the appellees herein. The policy had a limit of $10,000 for any one injury.

Pinter sued appellants herein on the ground that Jones was served intoxicants at appellants' bar at a time when he already was intoxicated, with the consequence that he thereafter struck Pinter in the eye. Pinter recovered judgment against appellants for $30,338.50. The

1. E. Barrett Prettyman, Senior Circuit Judge of the District of Columbia Circuit, sitting by designation.

insurance company paid $10,000 toward the satisfaction of this judgment, this being the extent of its liability under the policy of liquor liability insurance. Appellants ultimately settled the balance of the judgment for $17,500 and contend that as a result of this payment their business was ruined and that they were forced to sell their bowling alley and bar at a loss.

Appellants filed the instant action against the insurance company upon the ground that Pinter's suit against appellants could have been compromised at a much lower figure than the $30,338.50 judgment but for the failure of the insurance company to conduct settlement negotiations in good faith and the action of the company in concealing material facts from appellants during the course of such negotiations. In the instant case the jury returned a verdict of $8,750 in favor of appellants. This verdict was set aside by the district court upon appellees' motion for judgment n. o. v., and judgment was entered for defendants-appellees.

On this appeal appellants contend that the district court erred in granting the motion for a judgment n. o. v., and in setting aside the verdict of the jury.

Before the trial of Pinter's suit, his attorney made an offer of settlement. While there is some dispute in the evidence as to the exact terms of this offer, the appellee insurance company construed it as an offer to settle the case for $16,370.77, which would be the amount of liability insurance, $10,000, plus workmen's compensation paid and anticipated to be paid, plus medical expenses. It was recognized that the amount of workmen's compensation paid had to be refunded to the workmen's compensation insurance carrier out of any recovery effected by Pinter. The insurance company submitted to the appellants herein the proposed compromise of the Pinter suit, and agreed that the company would pay $10,000, the full amount of its obligation under the policy, if appellants would pay the balance of $6,370.77.

In granting the motion for judgment n. o. v., the district judge, the Honorable Wade H. McCree, Jr., found that appellants took the adamant position that they would pay nothing in the Pinter case and decided to take their chances upon the outcome of that suit, saying:

"The law on this case seems to be that in addition to its contractual obligation under the provisions of the contract, the insurer owes to the insured a duty to conduct negotiations in good faith. * * *

"In the instant case the insurance company, defendant herein, went to great lengths to advise the insured of the danger it faced of a possible verdict in excess of policy limits. This disclosure is evidenced by several letters addressed by the insurer to the insured, such letters being exhibits received in evidence herein.

"The court finds that the evidence is beyond dispute that the insured was advised of the insurer's apprehension in this respect and that the insured was told on several occasions that it might be well to engage an attorney to protect the interests of the insured. * * * *"

Appellants base their main argument for reversal upon the fact that their insurer, St. Paul-Mercury Indemnity Co., had merged with the St. Paul Fire & Marine Insurance Company on January 1, 1957, prior to the commencement of the Pinter suit, and the latter company was the workmen's compensation carrier for the Holland Hotel, which paid workmen's compensation to Pinter for the loss of his eye. Appellants charge that their insurance carrier, as well as the attorneys who represented them as defendants in the Pinter litigation, had a conflict of interest, in that the insurance carrier was obligated to defend the Pinter suit on behalf of appellants, and at the same time was seeking to be reimbursed for workmen's compensation benefits paid by it as workmen's compensation carrier to Pinter. It is contended that because of the failure of their in-

surance company to disclose these material facts appellants were unaware of the true situation and were "blindfolded."

No question is raised as to the ability and experience of the members of the law firm engaged by the insurance company to defend the Pinter suit or as to the skill and good faith of the attorneys in the preparation and trial of the suit. The record contains ten letters written by the law firm to appellants concerning the Pinter litigation. These letters pointed out the danger of a verdict substantially in excess of $10,000, suggested that appellants employ their own counsel to assist in the defense, and set forth details concerning the offer of compromise, including the name of the workmen's compensation carrier.[2]

2. On September 18, 1957, this law firm advised appellants as follows:

"This letter is merely to call your attention to the fact that the law suit in this case is in the sum of $95,000.00, which is very much in excess of your policy limits, which cover you only to the extent of $10,000.00 for each person. The Company is proceeding to defend you under all of the terms and conditions of your policy, but you have a right, if you so desire, to employ your own counsel at your own expense, to assist in the defense of this case."

On November 8, 1957, a letter was written containing this language:

"We again wish to call your attention to the fact that the law suit in this case is for the loss of an eye, as a result of a fight. The Plaintiff claims, among other things, that a certain Indian by the name of LeRoy Jones, became intoxicated because of the unlawful selling of beer and liquor at the East Tawas Recreation, and because of his intoxicated condition, started a fight with Michael Pinter, who lost his eye. This law suit is in the sum of $95,000.00, which is very much in excess of your policy limits, which cover you only to the extent of $10,000.00 for each person. As we stated in our letter of September 18th, the insurance company is proceeding to defend you and the East Tawas Recreation under all of the terms and conditions of your policy, but you have the right, if you so desire, to employ your own counsel, at your own expense, to assist in the defense of this case."

On November 20, 1957, the attorneys advised appellants as follows:

"We had a pre-trial hearing in connection with the above case the other day, and I tried to pin the Plaintiff's attorney down to just what he claims, and the Judge made him divulge that information. He claims that LeRoy Jones, the Indian, came into your place of business on April 25, 1956, at about 11:00 A.M. or 11:30 A.M. and was drinking whiskey with beer for a chaser, and that he stayed at your place of business until about 3:30 P.M., and that when he left at 3:30 P.M. he was very intoxicated. I know that he has a signed statement from LeRoy Jones, but just what it contains I do not know. The attorney states that LeRoy Jones will testify to these facts. The attorney further claims that he has some other witnesses that will verify this. If this is true, this is likely to become a very bad case.

"We tried to find out how much the case could be settled for, and the attorney stated that his client wanted $25,000.00. However, he stated that he would recommend that this client accept $16,500.00. Inasmuch as your policy limits are only $10,000.00, we thought it advisable to pass this information along to you to find out what your reaction was.

"We will probably be taking some discovery depositions shortly, and this case will be set for trial shortly after the first of the year. If you are going to get an attorney in this case to represent your interests, we suggest that it be done promptly, so that he can be present when the pre-trial depositions are taken."

On December 31, 1957, the attorneys advised appellants that, as a result of pre-trial depositions, it was apparent that Pinter would have sufficient evidence to take the case to the jury and that "if a judgment is rendered for the plaintiff, it is certainly going to be in excess of $10,000."

On January 7, 1958, the attorneys wrote a lengthy letter to appellants summarizing the evidence that would be offered at the trial, and saying:

"Who the jury is going to believe, we do not know. We will do our best to defend your interest, as well as our own. Our experience has been, however, that the sympathy of a jury is always with the injured party and the injuries in this case could support a judgment as high as $35,000.00.

Under the law of Michigan, "[T]he insurer is liable to the insured for an excess of judgment over the face of the policy when the insurer, having exclusive control of settlement, fraudulently or in bad faith refuses to compromise a claim for an amount within the policy limit." City of Wakefield v. Globe Indemnity Co., 246 Mich. 645, 648, 225 N.W. 643, 644; Stevens v. Northwestern National Casualty Co., 305 F.2d 513 (C.A. 6), cert. denied, 374 U.S. 812, 83 S.Ct. 1703, 10 L.Ed.2d 1035; Bentley v. Farmers' Insurance Exchange, 289 F.2d 59 (C.A. 6). It is recognized, however, that if the insured actively concurs in the rejection of a compromise offer, he cannot recover against the insurer for failure to settle. 29A Am.Jur. Insurance § 1445 (1960). In Stevens v. Northwestern National Casualty Company, supra, this court held that the insurance company was not guilty of bad faith when the insured had concurred in the decision against settlement, saying:

"The insured had been advised of the amount claimed which was in ex-

"For your further information, the St. Paul Fire and Marine Insurance Company, at the time of this accident, carried the Workmen's compensation insurance on the Holland Hotel where Michael Pinter was an employee and as a result of this accident they are required to pay workmen's compensation under the Workmen's Compensation Law of the State of Michigan at the rate of $36.00 per week for 162 weeks for the loss of an eye, or $5,832.00. In addition to that, the St. Paul Fire and Marine Insurance Company is obliged to pay all medical expenses in connection with this accident, which to date amounts to $538.77, and there may be more medical expenses in the future. Under the Workmen's Compensation Law, the St. Paul Fire and Marine Insurance Company is entitled to be reimbursed in the case of a judgment in this case to the extent of their payments.

"The plaintiff in this case at the present time is willing to accept in settlement $10,000.00, plus any amount the St. Paul Fire and Marine Insurance Company is obliged to pay out by way of compensation or medical expenses. In other words, the plaintiff is willing to accept in settlement the total sum

cess of the policy limits and of his right to engage counsel to represent him for his uninsured liability. He was content to be represented by the attorney for the insurance company. He agreed with their judgment that the case did not warrant settlement." 305 F.2d at 514.

Viewing the evidence in the light most favorable to appellants, we agree with the district judge that it is conclusively established that appellants rejected all suggestions that the Pinter suit be compromised and took the firm position throughout the course of that litigation not only that they would not contribute anything to a settlement but that their insurance carrier should not pay out any money for a compromise of the case.

We approve the following language of Judge McCree in his ruling on the motion for a judgment n. o. v.:

"The evidence is also beyond dispute that the insured partnership, through partner Marion Jackson and

of $16,370.77. If the plaintiff got such a settlement, he would keep $10,000.00 for himself and immediately pay to the St. Paul Fire and Marine Insurance Company the sum of $6,370.77.

"In view of the facts which have been developed in this case, we feel that there is a possibility that a substantial judgment may be rendered in this case, and for that reason the company which carries your insurance is willing to pay their policy limits in settlement. This, of course, is not acceptable to the plaintiff as he wants $6,370.77 in addition thereto and, as we understand it from your phone conversation this morning, you are not willing to pay anything in settlement of this case and you believe that your insurance company should not pay anything. You may be absolutely right and, as we stated, above, we, on behalf of your insurance company, will endeavor to protect you to the best of our ability and defend you under all of the terms and conditions of your policy.

"As stated above, we are merely giving you all of this information so you will be in a position to make up your own mind as to what you want to do when the Judge starts pressing the parties to make a settlement."

partner Paul Jackson, stated that they were unwilling to contribute anything to effect a settlement, and that it was the decision of the insured to take a chance on the verdict not exceeding $10,000, for which amount they were entitled under the insurance contract to indemnity. * * *

" * * * The court also finds as a matter of law that the compensation carrier, despite its identity with the insurer, had no duty to the Jacksons to waive reimbursement of compensation benefits paid as compensation insurance carrier for the Holland Hotel.

* * * * * *

"The court also finds that in the light of the adamant position of the Jacksons to pay nothing and to take a chance on the outcome of the lawsuit that such non-disclosure of identity of the two insurance carriers, if it amounted to a fraud on plaintiffs, or breach of faith with reference to them, was not a proximate cause of the injury which befell them since there was never willingness on the part of plaintiffs to contribute anything."

It is charged that the insurance carrier and its attorneys failed to make a complete and frank disclosure to appellants that it was also the workmen's compensation carrier and that upon settlement appellee would be entitled to a recovery of all workmen's compensation payments made to Pinter.[3] We do not consider this assertion because we find nothing in the record to indicate that, even if they had received complete information concerning these matters, appellants would have agreed to have made any contribution toward the compromise of the litigation. We concur with the district judge in his conclusion that the plight of appellants came about from their own steadfast refusal to entertain

any offer of settlement, and not from the failure of the insurance company and its attorneys to make a complete factual disclosure.

All other contentions of error made by appellants on this appeal have been considered and found to be without merit.

Affirmed.

---

3. It is to be noted that none of the attorneys for appellees in the instant case were associated in the original suit filed

by Pinter against Jackson, wherein this situation arose.