**Emmanuel JONES, Margaret Sanders, and Samuel Washington, Plaintiffs,**

v.

**NATIONAL EMBLEM INSURANCE COMPANY, an Illinois Corporation, Defendant.**

**Civ. A. No. 5–71097.**

United States District Court, E. D. Michigan, S. D.

July 29, 1977.

Robert Goren, Frimet, Goren & Bellamy, Southfield, Mich., for plaintiffs.

William A. Joselyn, Joselyn, Rowe, Jamieson & Grinnan, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case arose from a disastrous automobile ride on March 29, 1964 in which all three plaintiffs were seriously injured. Jones, the owner of the automobile, and Washington rode as passengers. Sanders, who was driving the automobile, had been awake for more than 24 hours and had been drinking. While driving the automobile at a high rate of speed, Sanders caused it to crash into a viaduct. As a result of the accident, Washington became totally blind, suffered fractures of the knee, leg, rib, skull, nasal septum, and jaw, was unable to walk and had difficulty in standing. He was 36 years old at the time of the accident, the father of five children, and employed as a truck driver. Washington brought suit against Jones and Sanders. National Emblem, defendant herein, assumed the defense of Jones and Sanders in that case.

Before trial, counsel for Washington offered to settle the claim for Jones' policy limits of $10,000. National Emblem refused the offer, insisting instead upon its own settlement offer of $1,500, which it increased to $3,000 on the eve of trial. Washington's counsel again offered to settle for the policy limits of $10,000 after the commencement of trial but before selection of the jury, and he repeated the same offer following denial of the defendant's motion for directed verdict. The offers were refused, and the jury returned a verdict of $311,-000.

The present action is brought by Washington, as judgment creditor, and by Jones and Sanders, as his judgment debtors, against the insurer on the ground that it breached its duty to use in good faith its exclusive and discretionary power to control settlement negotiations. Plaintiffs pray for $301,000—the value of the underlying judgment less the policy limits, which the insurer has paid plus interest. The defendant has moved to dismiss or for summary judgment against Washington on the ground that he is not the real party in interest. The three plaintiffs also have moved for summary judgment, on the ground that the insurer's bad faith is established as a matter of law by its failure to adequately notify its insured of: (1) the possibility of a judgment against them in excess of the policy limits; (2) their right to retain independent counsel; (3) the insurer's potential conflict of interest; and (4) the settlement offers and the significance of their rejection.

## I. *Direct Action by the Injured Person Against the Insurer.*

Washington stands before this court as the judgment creditor on the underlying personal injury claim against Jones and Sanders, the insured. Jones and Sanders have not assigned their cause of action against the insurer to Washington. Rather, judgment creditor and judgment debtors join together in a united action against the insurer.

■ It is now settled, in Michigan as elsewhere, that the insured may bring suit against the insurer for the latter's bad faith refusal to settle a claim within the policy limits. *Wakefield v. Globe Indemnity Co.,* 246 Mich. 645, 225 N.W. 643 (1929). The basis for this duty is the insurer's exclusive control over settlement negotiations, coupled with the "conflict between the insurer's interest to pay less than the policy limits and the insured's interest not to suffer liability for any judgment exceeding them." *Bourget v. Government Employees Ins. Co.,* 456 F.2d 282, 285 (2d Cir. 1972). See R. Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv.L.Rev. 1136, 1138 (1954).

Traditionally, breach of this duty has been considered tortious, and the cause of action has been considered personal to the insured. The only one toward whom the insurer owes a duty is the insured, and therefore it has always been assumed that the only one injured by breach of this duty is the insured. Consequently, refusal-to-settle claims brought directly by the insured's judgment creditor against the insurer traditionally have been dismissed. *See e. g., Bennett v. Slater,* Ind.App., 289 N.E.2d

144, 63 A.L.R.3d 670 (1972); *Rowe v. United States Fidelity & Guaranty Co.,* 421 F.2d 937 (4th Cir. 1970); *Dillingham v. Tri-State Ins. Co.,* 214 Tenn. 592, 381 S.W.2d 914 (1964); Annot., 63 A.L.R.3d 677 (1975).

However, it does not follow with irresistible necessity that because the insurer owes no duty to the injured party, the latter has no interest in the cause of action for breach of the insurer's duty. It makes little or no sense to restrict the bad faith claim against the insurer to its insured, even though he is the only person to whom the insurer owes a duty. The injured person has interests in the bad faith claim that are substantial: the injured person proposed the settlement, and it was his offer that the insurer rejected; he was forced to undergo the emotional and financial rigors of trial and to rely wholly on the uncertainty of a jury verdict for his recovery because of the insurer's refusal to accept his settlement offer. The value of the bad faith claim is controlled by the amount of the underlying personal injury judgment, and it is considered "sufficiently liquidated" for the judgment creditor to proceed directly against the insurer by way of garnishment.[1]

A direct cause of action by the injured person against the insurer serves the public interest in a number of ways. First, it encourages the settlement of personal injury claims, because an insured of modest means may avoid his liability above his policy limit by filing for bankruptcy.[2] If the insured discharges his debt by filing in bankruptcy, he has no reason to pursue his cause of action against the insurer. Given the possibilities in bankruptcy, neither insurer nor insured have much to fear by refusing to accept a policy-limits settlement offer. The only person adversely affected by the insured's bankruptcy proceedings is the injured person, who is left with nothing. If the courts recognize the cause of action in one who has the motivation to pursue it, the insurer is encouraged to conduct settlement negotiations responsibly.

A direct cause of action also eliminates the danger of the insured reaping a windfall from his own wrongdoing by slipping away with and quickly dissipating the proceeds of a judgment against his insurer.

Finally, a direct cause of action reduces the quantity of litigation required to discharge the insured's liability on the underlying judgment.

In recognition of these and similar considerations, it has been held that the judgment creditor may sue the tort-feasor's insurer directly for its fraud or bad faith in the conduct or handling of the suit, without an assignment by the judgment debtor. *Thompson v. Commercial Union Ins. Co. of New York,* 250 So.2d 259 (Fla.1971). It appears that Michigan would adopt a similar rule. In *Rutter v. King,* 57 Mich.App. 152, 226 N.W.2d 79 (1974), the court of appeals held that the judgment creditor may maintain a garnishment action directly against the insurer after what appears to be an *in*voluntary assignment by the insured of his bad faith claim. Although the court expressly declined to rule on the question squarely presented to this court, because of the presence of an assignment, it did note that: "The single issue which would be involved in a direct action suit— did [the insurer] in fact exercise bad faith— is the identical unresolved issue which will

---

1. *Rutter v. King,* 57 Mich.App. 152, 189, 226 N.W.2d 79 (1974).

   It appears, after *Rutter,* that Michigan now allows the injured person, as judgment creditor, to bring a garnishment proceeding against the insurer. Defendant herein has not denied that the injured person also could have prosecuted this action pursuant to an assignment, had there been one.

2. The liability is not discharged by bankruptcy if it derives from the bankrupt's "willful and malicious injuries to the person or property of another." Bankruptcy Act, § 17(a)(8), 11 U.S.C. § 35(a)(8).

   It is possible, in the instant case, that the insureds' liability is not dischargeable, as the verdict was returned against them under the higher burden of proof required by Michigan's guest passenger statute, before that statute was declared unconstitutional in *Manistee Bank & Trust Co. v. McGowan,* 394 Mich. 655, 232 N.W.2d 636 (1975). The question of this debt's dischargeability by bankruptcy has not come before the court, and the insureds have not filed bankruptcy petitions.

be litigated to conclusion in the garnishment proceedings." 57 Mich.App. at 172, 226 N.W.2d at 88.

■ The court concludes that for the purpose of satisfying the requirements of F.R.C.P., Rule 17(a), the following factors establish the judgment creditor as a real party in interest: (1) the insurer's bad faith in the handling of the claim forced the injured person to go to trial; (2) the cause of action for bad faith arose from the insurer's rejection of the injured person's settlement offer; (3) the amount of the underlying personal injury judgment controls the value of the bad faith claim; and (4) this amount is owed in full to the injured person by the insured.

■ The court's holding is not intended to minimize in any way the insured's substantial interest in the bad faith claim. The insurer's duty to handle the claim in good faith is owed to its insured. It is he who is liable for the underlying personal injury judgment, and he will be the only source for satisfaction of that judgment if the bad faith claim against the insurer fails.

■ In this case, the insured joined with their judgment creditor as plaintiffs, and all pray for damages equal to the amount of the underlying judgment less the policy limits, payable to them "as their interest may

appear."[3] Absent an assignment, Jones and Sanders continue to have a substantial interest in this lawsuit, and they will not be dismissed.[4]

For the reasons set forth above, the defendant's motion to dismiss or for summary judgment is denied.

II. *The Insurer's Liability for Refusing to Settle.*

In seeking summary judgment in their favor, plaintiffs rely on the insurer's failure to notify Jones and Sanders regarding: (1) their liability greatly in excess of the policy limits; (2) their right to retain independent counsel; (3) the insurer's conflict of interest; and (4) the significance of Washington's offer to settle within the policy limits.

The only correspondence presently on record in this case is a letter from the insurer to Jones dated March 5, 1968, informing him that Washington had proposed settlement for $10,000; that "(t)his figure is representative of your single injury limits under the policy issued to you"; that because Washington was a guest passenger, he could not prevail at trial; that the best course of action would be to proceed to trial; and that Jones would be notified if the company should decide to make any offers.[5] The defendant asserts, without

---

3. The court is not called upon in this case to consider whether the expenses, rigors, and uncertainties of trial are compensable.

4. The dangers of collusion are no greater in this proceeding than in any other proceeding against the insurer for its bad faith in conducting settlement negotiations. The injured person may be more tempted to suborn the perjury of the insured in the personal injury case if he knows that he can sue the insurer directly for its bad faith; but the insured's temptation to commit perjury should be no greater, as the proceeds of the bad faith claim are owed to the injured person regardless of who brings the suit.

5. "March 5, 1968

"Claim #: 66R38474(2)

"Manuel Jones
18130 Goddard
Detroit, Michigan

"Dear Sir:

"As you know, we are presently defending a law suit for you in Wayne County Circuit

Court. This suit emanates from an accident which occurred on March 29, 1964 on Edsel Ford by Brush and involves Samuel Washington who was a passenger in your car and has brought suit against you.

"His attorney, Robert Goren, has made a formal demand in writing on Washington's behalf to settle out of court for Ten thousand dollars. This figure is representative of your single injury limits under the policy issued to you.

"At the time of the accident Mr. Washington was a 'guest passenger' in your car. In order to collect in this situation, under the laws of this state, the plaintiff must show gross negligence on the driver or you. This would consist of wilful wanton misconduct and utter disregard of the safety of others. Our investigation reveals that these conditions did not exist, therefore Mr. Washington cannot recover. In view of this, we have made no offers and feel the best course of action is to defend this suit.

supporting documentation, that, in addition to this letter, the "usual excess letter" was sent to Jones. Jones denies having received any such letter. The defendant acknowledges that it sent no correspondence to Sanders, and that it owed her, as the driver of the vehicle, an insurer's duty. Ample opportunity has been given to the defendant to document the claim of sending the "usual excess letter" and to detail its exact contents. It has never been produced and no specific proof of its sending or its contents have been made available. Instead the record shows only the general claim of sending the "usual excess letter." The purpose of summary judgment is to smoke out just such claims as this and when they cannot be documented to permit the court to cut through the claims and decide the motion on what appears to be the specific provable facts, as distinguished from general claims.

For the purpose of deciding plaintiffs' motion, the court accepts as undisputed fact what has been made a part of the record: that the defendant sent to Jones the letter dated March 5, 1968, that it sent no other correspondence to Jones, and that it sent no correspondence to Sanders. There is no dispute about the other material facts, which have been set forth in the opening paragraphs of this opinion. The court concludes, on the basis of all the undisputed facts on record, that plaintiffs are entitled to summary judgment.

■ Under Michigan law, the insurer is liable for a judgment in excess of the policy limits when, "having exclusive control of the settlement, [it] fraudulently or in bad faith refuses to compromise a claim for an amount within the policy limit." *Jackson v. Saint Paul-Mercury Indemnity Co.,* 339 F.2d 40, 44 (6th Cir. 1964); *Wakefield v. Globe Indemnity Co.,* 246 Mich. 645, 225 N.W. 643 (1929).

The insurer's bad faith may be evidenced in a variety of ways:

"Where, because of the likelihood that an excess verdict will be returned, the greater financial risk of the litigation rests on the insured, a finding of bad faith on the part of the insurer may be based on such factors as these:

"(1) The failure of the insurer to investigate properly the circumstances of the accident.

"(2) The refusal of the insurer to accept a settlement within the limits of the policy.

"(3) The failure of the insurer to inform the insured of a compromise offer.

"(4) The failure of the insurer to attempt to induce contribution by the insured."

*Brockstein v. Nationwide Mutual Ins. Co.,* 417 F.2d 703, 706 (2d Cir. 1969).

In *Brockstein,* the insurer's bad faith was evidenced by its failure to inform the insured of the latter's opportunity to avoid a judgment greatly in excess of the policy limits by making a relatively small contribution. In *Smoral v. Hanover Ins. Co.,* 37 A.D.2d 23, 322 N.Y.S.2d 12 (1971), the insurer's failure to notify the insured of settlement negotiations was held to be bad faith where the settlement was made in return for a release reserving all rights against the driver-insured. In *Meirthew v. Last,* 376 Mich. 33, 135 N.W.2d 353 (1965), it was held that the insurer must notify the insured promptly and specifically of any defense of no coverage that it may assert.

■ As a necessary corollary of the insured's right to retain independent counsel for protection against excess liability, it is clear that the insurer has a duty promptly and clearly to inform the insured of: (1) the possibility of a judgment in excess of the policy limits; (2) the insured's right to retain independent counsel; (3) the limits of the insurer's interest in the lawsuit; and (4) all settlement offers, including the insurer's response to such offers and the legal significance of those responses expressed in terms

"If we should choose to make any offers whatsoever, you will be notified.
Sincerely,

Michael McGillen
Casualty Supervisor"
MM: vhl

of the insured's liability. The extent and clarity of such notice by the insurer to the insured is a substantial factor to be weighed in determining whether the insurer handled settlement negotiations in good faith. *See, e. g., Jackson v. Saint Paul-Mercury Indemnity Co.,* 339 F.2d 40 (6th Cir. 1964); *Bentley v. Farmers' Ins. Exchange,* 289 F.2d 59 (6th Cir. 1961) (per curiam).

This case, which went to trial before Michigan's guest passenger statute was declared unconstitutional,[6] clearly could have gone to a jury on a theory of willful and wanton misconduct. This fact, in conjunction with the severity of the plaintiff's injuries, which he suffered in the prime of his life, while employed and while responsible for the support of a wife and five children, made a strong case for settlement and clearly indicated that a verdict in favor of the plaintiff would greatly exceed the policy limits. Under such circumstances, the insurer's refusal to accept the settlement offer is virtually conclusive evidence of its bad faith.

Furthermore, the insurer's notice was woefully inadequate. It failed to inform Jones of the extent of his liability in excess of the policy limits; it failed to advise him of his right to retain counsel at his own cost; it failed to explain the limits of the insurer's interest; and it failed to explain the legal significance of its decision to reject the settlement offer. The insurer failed to inform Jones of the two additional settlement offers and failed to inform Sanders of anything.

Given the factual context, the insurer's refusal to settle and the inadequacy of its notice unequivocally establish its bad faith in the handling of the case. Although bad faith normally is a question for the jury, the court would be compelled to direct a verdict in favor of plaintiffs were this case to go to a jury. The record has been fully developed, and the case is ready for

trial now.[7] It makes no sense "to postpone the agony" any longer.

Accordingly, the plaintiffs' motion for summary judgment is granted.

So ordered.

---

6. *Manistee Bank & Trust Company v. McGowan,* 394 Mich. 655, 232 N.W.2d 636 (1975).

7. Counsel for defense asserts that he "believes" evidence may be found to show that an "excess letter" was sent to Jones. Such assertions are not adequate in response to a motion for summary judgment. F.R.C.P., Rule 56(c). If such evidence is found, the court will entertain a motion for reconsideration.