620 F.2d 583
 Geoffrey Raymond Peter Norman VALENTINE, on behalf of
himself, as one of the Underwriters, and on behalf of
certain other Underwriters at Lloyd's of London, Subscribing
to Policy No. CX 0864, and Andrew Weir Insurance Ltd., as
Assignees and/or Subrogees of Montgomery Elevator Company, a
Foreign Corporation, Plaintiffs-Appellants,
v.
LIBERTY MUTUAL INSURANCE COMPANY, a Foreign Corporation,
Robert B. Campbell, and Johnson, Campbell &
Moesta, P. C., a Michigan professional
corporation, jointly and
severally,
Defendants-
Appellees.
 No. 78-1062.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 7, 1980.
Decided May 6, 1980.
 
 William D. Booth, Jeanette A. Paskin, Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, Detroit, Mich., Malcolm B. Rosow, Standard, Weisberg, Heckerling & Rosow, New York City, for plaintiffs-appellants.
 G. Cameron Buchanan, Buchanan, Ogne & Jinks, Frederick Ecclestone, Troy, Mich., for Liberty Mut. Ins. Co.
 Ralph F. Valitutti, Jr., Richard A. Kitch, Kitch & Suhrheinrich, Harry J. Sherbrook, Detroit, Mich., for Campbell.
 Before WEICK and BROWN, Circuit Judges, and PECK, Senior Circuit Judge.
 BAILEY BROWN, Circuit Judge.
 
 
 1
 Appellants, Lloyd's of London and Andrew Weir Insurance Ltd. (Lloyd's), excess liability insurance carrier and equitable subrogee and assignee of Montgomery Elevator Company (Montgomery), filed this action in the United States District Court for the Eastern District of Michigan, Southern Division, to recover an amount paid by Lloyd's in excess of Montgomery's primary coverage as a result of a judgment against Montgomery in a state court personal injury action. Lloyd's principal contention was that appellees, Liberty Mutual Insurance Co. (Liberty), the primary carrier, and Robert Campbell, defense attorney retained by Liberty in the personal injury action, were liable for their failure timely to advise Montgomery and/or its excess carrier, Lloyd's, that the possibility of excess liability existed.[1] The district court, applying Michigan law in this diversity case, held at the conclusion of a bench trial that liability could not be imposed upon Liberty in the absence of "bad faith." The district court, finding no bad faith on the part of Liberty and no negligence on the part of Campbell, granted judgment for Liberty and Campbell. Lloyd's has therefore appealed.
 
 
 2
 Since we conclude that the district judge applied correct legal principles and that his findings are not clearly erroneous (Rule 52(a), Fed.R.Civ.P.), we affirm.
 
 
 3
 * In May, 1970 Albino Garza, Jr., sustained injuries when a grate in an elevator at his place of employment fell on his head. The elevator was maintained by Montgomery and was last serviced approximately two months before the accident. Garza filed suit against Montgomery in November, 1970, seeking $25,000 damages. The policy issued by Liberty to Montgomery provided for coverage limits of $100,000 per person and $300,000 per occurrence. Montgomery was insured beyond this coverage by the excess carrier, Lloyd's. Montgomery's defense was undertaken by Liberty, which retained Campbell to represent Montgomery.
 
 
 4
 In May 1972, the trial judge allowed Garza to increase the ad damnum clause to $100,000. A mistrial was granted in Garza's first trial on April 16, 1973 because of a remark made by his attorney in opening statement to the jury that Garza was seeking $300,000 in damages and was claiming an aggravation of a pre-existing injury. On motion made after the mistrial, the ad damnum clause was increased again to seek $750,000 in damages and the complaint was further amended to allege aggravation of a pre-existing injury. Also, the day before this mistrial, Mrs. Garza sued for $100,000 for loss of consortium, which action was consolidated with Mr. Garza's action on June 8, 1973.
 
 
 5
 Liberty first advised Montgomery that Garza's ad damnum had been increased to $100,000 on June 25, 1973, the first day of the trial that was completed and resulted in the excess judgment. Montgomery did not learn of the increase to $750,000 until June 29, this information being received by it from Lloyd's attorney who in turn had received it during the trial. While Montgomery was served with a copy of Mrs. Garza's complaint suing for $100,000 in April, 1973, its claims manager erroneously thought it was covered by the Liberty policy by virtue of the $300,000 limit per occurrence in that policy. It is conceded that, while Campbell gave no notice to Montgomery or Lloyd's of the increases in ad damnum, he gave timely notice to Liberty.
 
 
 6
 On July 2, 1973, the case was submitted to the jury, which returned a verdict of $200,000 for Garza and $50,000 for Mrs. Garza. The Garzas received full satisfaction of their judgments from Liberty and Lloyd's. Lloyd's then commenced this action in district court against Liberty and Campbell. It contended that Liberty and Campbell should be held liable for the excess liability because of their alleged negligence and bad faith in the handling of the litigation. Lloyd's predicated this claim on two grounds. First, it alleged that Liberty and Campbell negligently and in bad faith failed to notify Montgomery and Lloyd's of the possibility of an excess liability situation. Secondly, it contended that Liberty acted in bad faith in failing to settle the Garza case within the limits of the primary insurance coverage.
 
 II
 
 7
 The district court concluded, as stated, that the law of Michigan requires a showing of "bad faith" on the part of an insurance company before liability in excess of the carrier's obligations under the policy can be imposed. Under the district court's analysis of Michigan law, mere negligence is insufficient to impose liability.
 
 
 8
 The leading Michigan case on this point is City of Wakefield v. Globe Indemnity Co., 246 Mich. 645, 225 N.W. 643 (1929). In Wakefield, plaintiff city sought reimbursement from the defendant liability insurance company for the amount the city was forced to pay in satisfaction of a personal injury judgment that exceeded the coverage provided for in the policy. Plaintiff contended that the defendant carrier, which provided defense for the personal injury action against the city, was guilty of bad faith and negligence in failing to settle the lawsuit. The trial court sent the case to the jury on a charge of ordinary negligence. A verdict was returned for plaintiff. The Supreme Court of Michigan reversed, holding that defendant could not be held liable for the excess liability in the absence of fraud or bad faith:
 
 
 9
 The policy amount constitutes a dead line of contractual power, obligation, and duty. The insured pays for protection to that amount only, and the insurer has no obligation to indemnify him in a greater sum. The insurer has no authority to bind insured by compromise in any amount above such limit nor to prevent his settling his own possible excess liability as he chooses. Within the policy limit, the insurer has no contract obligation to effect settlement, as the policy contains no promise that it will do so under any conditions or circumstances. Nor within such limit can the insured be injured by any compromise or failure to compromise, as liability to that amount must be paid by the insurer. It seems very plain that the exclusive power to control settlements within the amount of the policy is ceded to the insurer for its sole benefit, to save itself, as far as may be, on account of its engagement to insured. Because of its purpose, the power is to be used according to the judgment and discretion of the insurer, and therefore, in attempting exercise of the power, it is not performing, or assuming to perform, a legal duty to insured, either express or implied. Without such legal duty, the obligation to use due care in the exercise of the power cannot be imposed by law.
 
 
 10
 225 N.W. at 644. We believe that the Wakefield requirement of a showing of bad faith is still the law of Michigan. Transport Ins. Co. v. Michigan Mutual Liability Ins. Co., 496 F.2d 265, 269 (6th Cir. 1974) and Jones v. National Emblem Insurance Co., 436 F.Supp. 1119 (E.D.Mich.1977) so recognize.[2] Although there are decisions from other jurisdictions, relied upon by Lloyd's, requiring only a showing of negligence in such cases, we are, in this diversity case, bound by the law of Michigan. We must therefore proceed to examine whether the district court was clearly erroneous in its finding of no bad faith. Rule 52(a), Fed.R.Civ.P.
 
 
 11
 Lloyd's contends that Liberty acted in bad faith by failing to notify Montgomery of the possibility of an excess liability situation, specifically of the increases in the ad damnum clause.[3] The district court held that this failure timely to notify Montgomery of the excess liability situation was negligent and that such negligence prejudiced Montgomery. However, the district court held that Liberty's failure timely to notify Montgomery did not constitute bad faith.
 
 
 12
 Liberty conceded at trial that it was its custom to advise its insureds of increases in ad damnum and simply overlooked doing so in this case. With respect to its failure to advise of the strength of the Garza action, Liberty's position was that, in its view, the Garzas would have difficulty in connecting the falling of the grate in the elevator to the work done two months prior thereto by Montgomery and would also have difficulty proving aggravation of a pre-existing injury.
 
 
 13
 As stated, the holding in Wakefield, supra, is that a finding of bad faith is required in order to hold the insurance company liable. As also stated in that opinion: "Good or bad faith is a state of mind." 225 N.W. at 645. There was no proof that Liberty, in its failure to give notice of the increases in ad damnum or of the seriousness of the Garza claims, was motivated by a selfish purpose, such as, for example, by a desire to avoid pressure from Montgomery or Lloyd's to settle within Liberty's policy limits or by a desire otherwise to protect its own interest at the expense of its insured's interest. Accordingly, we cannot say that the district judge's finding of no bad faith was clearly erroneous.[4]
 
 
 14
 Although such a claim is not asserted in the complaint, the district court dealt with a contention that Liberty was guilty of bad faith in failing to settle within the policy limit and found there was no such bad faith. In this connection, the district court pointed out that part of the problem was caused by the unusual way in which claims were handled by the firm of attorneys representing the Garzas. It seems that the firm had three attorneys who did nothing but prepare complaints (the first complaint filed being a form complaint) and that the trial attorney did not get the file until the day before the first day of trial. The district court further found that Liberty offered approximately $75,000 in settlement which was recommended by the Garza's attorney but turned down by them. In view of the foregoing findings and in view of the possible defenses available to Montgomery, we cannot say that the district court was clearly erroneous in ruling that Liberty was not guilty of bad faith in failing to settle.
 
 III
 
 15
 As stated, it is conceded that the lawyer retained by Liberty to defend Montgomery, Campbell, gave ample notice of increases in the ad damnum clause to Liberty but none to Montgomery. The proof showed and the district court found that Campbell neither knew nor should have known the policy limits and, based upon testimony of attorneys, that it was the custom and practice and proper procedure for lawyers representing insurance companies to give notice of ad damnum increases to the insurance company but not to the insured. The district judge therefore found that Campbell was not guilty of negligence (malpractice) in failing to advise Montgomery, a finding that we cannot say is clearly erroneous.[5]
 
 
 16
 The judgment of the district court is therefore affirmed.
 
 
 
 [1]
 Lloyd's rights in this suit are premised upon its status as an equitable subrogee and as an assignee of Montgomery. It also claims a right to sue on the basis of a breach of a direct duty to it by Liberty and Campbell as the excess carrier. In Jones v. National Emblem Insurance Co., 436 F.Supp. 1119 (E.D.Mich.1977), the district court, applying Michigan law, ruled that a party who held a partially unsatisfied judgment obtained in a personal injury action, could maintain an action against the judgment debtor's liability insurance company for wrongful failure to settle. In any event, Liberty and Campbell concede that Lloyd's stands in Montgomery's shoes and may here assert any claim Montgomery has against them
 With respect to Lloyd's contention that Liberty and Campbell had a direct duty to it, such is difficult to conceptualize since there was no contract relation between them. Lloyd's argues that Liberty had a tort duty to it, though the duty as defined by Lloyd's is amorphous to say the least. It also argues that it was a third party beneficiary to the Liberty policy, but there is no evidence cited that Liberty knew of the Lloyd's excess policy when it issued its policy or that Lloyd's policy had even been issued or contemplated at that time. Formulating a direct duty from Campbell to Lloyd's is even more difficult. No Michigan law is cited in support of a direct duty.
 
 
 [2]
 In Transport, this court reversed the district court with respect to its finding that a liability insurance company was guilty of bad faith in its failure to contribute to a proposed settlement. In National Emblem, the district court, in the unusual situation presented there, granted a summary judgment against a liability insurance company on the issue of bad faith for failure to settle and other issues
 
 
 [3]
 Lloyd's contends also that Liberty was guilty of bad faith in failing to notify Montgomery of the increasing seriousness of the Garza claims. However, both at trial and here, Lloyd's emphasized the failure to give notice of the increases in the ad damnum clauses. As indicated, the district court held that there was no bad faith in either respect
 
 
 [4]
 As heretofore pointed out, Montgomery actually had notice that the Garza actions exceeded the Liberty policy limits since Garza's complaint for $25,000 and Mrs. Garza's complaint for $100,000 were served on it. This is true even though Montgomery erroneously thought it was covered by the $300,000 limit for each occurrence. However, the district court did not rely on this fact in reaching its conclusion. We therefore do not rely on it in affirming the district court
 
 
 [5]
 Lloyd's also contends that Campbell is liable for malpractice in the investigation of the claims and the trial of the case, but such claim is not in the complaint and the district judge refused to allow a trial amendment to add such a claim