KETOLA v. FROST.

DECISION OF THE COURT.

1. AUTOMOBILES — OVERTAKEN VEHICLES — REAR-END COLLISION — PROXIMATE CAUSE — QUESTION FOR JURY.

Negligence of defendant van driver and contributory negligence of overtaken dump truck driver, plaintiff's decedent, were properly left for jury's determination in action arising from collision early in December as westbound defendant in left lane of 2-lane village street, part of State highway, saw decedent veer into such lane as he neared county road commission garage on south side of road, and as defendant driver attempted to return to north lane his vehicle skidded on slushy pavement, and collided with right rear of dump truck which shortly overturned.

2. TRIAL—SPECIAL QUESTION—EVIDENCE.

Submission of special question to jury as to whether plaintiff's westbound decedent had given a signal for a left turn into

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 776, 786, 800, 1013, 1015.
[2, 8] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 807, 808, 1038.
[3, 4, 9, 10] 8 Am Jur 2d, Automobiles and Highway Traffic § 1038. 53 Am Jur, Trial §§ 1063–1065, 1068, 1070.
[5, 11] 53 Am Jur, Trial §§ 1090, 1091.
[6, 12] 8 Am Jur 2d, Automobiles and Highway Traffic § 579.

county garage property on south side of highway and jury's affirmative answer thereto *held*, not reversible error, since the mere submission of such a question constituted an admission that an issue of fact had been created by the proof.

3. SAME—SPECIAL QUESTION—EVIDENCE.
   The submission of a request for a special question constitutes an admission that the proofs have created an issue of fact for determination by the jury.

4. SAME—SPECIAL QUESTION—DISPUTED FACT.
   Request for submission of special question was properly denied, where it was premised upon a disputed fact, the answer to which dispute was assumed, not sought, by the question.

5. SAME—SPECIAL QUESTION—MIXED QUESTION OF LAW AND FACT OR QUESTION OF LAW.
   It is improper to submit a special question to a jury which is a mixed question of law and fact or solely a question of law.

6. AUTOMOBILES—LESSEE OF TRUCK-TRACTOR AS OWNER—STATUTES.
   Lessee of truck-tractor who had rented the vehicle under a lease giving it the right to exclusive supervision and control over its operation and over its drivers and helpers was liable as an owner under the vehicle code, notwithstanding the lease permitted individual use of the equipment by the lessor when needs of lessee did not require the use of the vehicle and lessor may have been on a personal mission at time of involvement of the equipment in accident resulting in death of plaintiff's decedent, since statutory definition of *owner* does not require that lessee have exclusive use in addition to the renting (CLS 1961, § 257.37).

SEPARATE OPINION.

DETHMERS and KELLY, JJ.

7. AUTOMOBILES — OVERTAKEN VEHICLES — REAR-END COLLISION — PROXIMATE CAUSE — QUESTION FOR JURY.
   *Negligence of defendant van driver and contributory negligence of overtaken dump truck driver, plaintiff's decedent, were properly left for jury's determination in action arising from collision early in December as westbound defendant in left lane of 2-lane village street, part of State highway, saw decedent veer into such lane as he neared county road commission garage on south side of road, and as defendant driver attempted to return to north lane his vehicle skidded*

*on slushy pavement, and collided with right rear of dump truck which shortly overturned.*

8. TRIAL—SPECIAL QUESTION—EVIDENCE.

*Submission of special question to jury as to whether plaintiff's westbound decedent had given a signal for a left turn into county garage property on south side of highway and jury's affirmative answer thereto* held, *not reversible error, since the mere submission of such a question constituted an admission that an issue of fact had been created by the proof.*

9. SAME—SPECIAL QUESTION—EVIDENCE.

*The submission of a request for a special question constitutes an admission that the proofs have created an issue of fact for determination by the jury.*

10. SAME—SPECIAL QUESTION—DISPUTED FACT.

*Request for submission of special question was properly denied, where premised upon a disputed fact to which dispute it does not seek, but assumes, the answer.*

11. SAME—SPECIAL QUESTION—MIXED QUESTION OF LAW AND FACT OR QUESTION OF LAW.

*Submission to a jury of special question as to whether certain undisputed or established facts constituted negligence, contributory negligence, or proximate cause is not improper merely because it may call for a determination of law or mixed law and fact rather than of fact only, there being no element of confusion of the jury.*

12. AUTOMOBILES—LESSEE OF TRUCK-TRACTOR AS OWNER—STATUTES.

*Lessee of truck-tractor who had rented the vehicle under a lease giving it the right to exclusive supervision and control over its operation and over its drivers and helpers was liable as an owner under the vehicle code, notwithstanding the lease permitted individual use of the equipment by the lessor when needs of lessee did not require the use of the vehicle and lessor may have been on a personal mission at time of involvement of the equipment in accident resulting in death of plaintiff's decedent, since statutory definition of owner does not require that lessee have exclusive use in addition to the renting (CLS 1961, § 257.37).*

Appeal from Schoolcraft; Baldwin (George S.), J. Submitted November 3, 1964. (Calendar No. 44, Docket No. 50,287.) Decided April 9, 1965.

Declaration by Pauline Ketola, administratrix of the estate of Emil Ketola, and the Auto-Owners Insurance Company, a corporation, against William Dolan Frost and Allied Van Lines, Incorporated, for injuries arising out of a rear-end truck collision on December 7, 1959. Verdict and judgment for plaintiffs. Defendants appeal. Affirmed.

*Strom, Hoehn & Shipman* (*Clair J. Hoehn,* of counsel) and *William J. Sheahan,* for plaintiffs.

*Burney C. Veum,* for defendant Frost.

*McGinn & Fitzharris* by *James R. Fitzharris* (*Ward, Plunkett, Cooney, Rutt & Peacock* by *William P. Cooney,* of counsel), for defendant Allied Van Lines, Inc.

BLACK, J. This suit for wrongful death arose out of a rear-end automotive collision. Plaintiff's decedent, Emil Ketola, was driving a county road truck in a westerly direction on highway M–28 in the village of Seney. He was approaching but had not yet reached the entrance to a county road garage, situated on the south side of the highway in Seney, and probably intended at the proper time to turn left into such entrance. The truck was struck from behind, in the manner presently indicated, by a truck-tractor "owned" by defendant Allied Van Lines, Inc., and driven by defendant Frost. The collision caused the county road truck to overturn. Mr. Ketola was fatally injured.

Trial to court and jury resulted in a substantial verdict for plaintiff. Judgment was entered upon such verdict. Motions by the defendants for judgment notwithstanding verdict, and later for a new trial, were denied. This appeal followed.

Counsel for plaintiff have accepted the following portion of defendants' brief-stated facts.[1] We find that such accepted portion is comprehensively informative and therefore record it from the brief:

"In late November 1959 defendant William Dolan Frost had hauled a shipment of freight for Allied Van Lines, Inc., to Florida and then returned to Buffalo, New York, with an Allied Van Lines, Inc., shipment. In Buffalo he was assigned another shipment from Allied Van Lines, Inc., to Minneapolis, Minnesota. He arrived at Minneapolis on Friday, December 4, 1959. He called the Chicago dispatcher of Allied Van Lines, Inc., and was told that there was a shipment going to Royal Oak, Michigan and that it would not be ready for shipment until the next Tuesday, December 8th. The practice of defendant Frost and Allied Van Lines, Inc., that had developed over the years was that defendant Frost could elect to take or refuse a shipment of freight. In the instant case if he wished to return to his home at Sault Ste. Marie, approximately 640 miles from Minneapolis, he could have done so and Allied Van Lines, Inc., would have had to secure another vehicle to carry the shipment to Royal Oak. However, defendant Frost elected to take the shipment from Minneapolis to Royal Oak on Tuesday, December 8th. He also had the election of staying at Minneapolis or returning to his home at Sault Ste. Marie.

"Defendant Frost had business to take care of in Sault Ste. Marie where his family lived and which was the headquarters for his business and at Ishpeming, Michigan, where he had a branch office of his business.

"On Monday, December 7, 1959, defendant Frost had an appointment with Morris E. Woodbridge, a procurement officer at the K. I. Sawyer Air Force Base which is located about 15 miles south of Marquette, Michigan. On December 1st Mr. Woodbridge

---

[1] There is one caveat, to which we shall presently come.

called the wife of William Dolan Frost at Sault Ste. Marie and arrangements were made for her husband to see Mr. Woodbridge at the K. I. Sawyer Air Force Base for purposes of entering into a new agreement for the storage of certain Air Force equipment. This business had nothing to do with the business of Allied Van Lines, Inc., and was entirely personal with defendant William Dolan Frost. All the benefit and profit from the proposed agreement with the procurement officer of the K. I. Sawyer Air Force Base would go to defendant William Dolan Frost.

"Defendant Frost elected to return to his home at Sault Ste. Marie and left Minneapolis on Saturday and arrived at Sault Ste. Marie on Sunday about noon. He attended to some of his business on Sunday and on Monday, December 7th, left to go to the K. I. Sawyer Air Force Base.

"En route to the K. I. Sawyer Air Force Base the accident occurred out of which this litigation ensued.

"Plaintiffs' counsel called defendant William Dolan Frost for adverse examination under the statute.[2] He testified that he left Sault Ste. Marie about 9:30 on the morning of December 7, 1959, and proceeded westerly on M–28 toward Seney. He was driving a tractor from which the trailer had been detached. He drove about 40 miles an hour between Sault Ste. Marie and Seney. As he came into Seney he saw a reduced speed sign and reduced his speed approximately 5 miles an hour. As he entered Seney he came around a curve. As he did so he saw the Schoolcraft county road commission truck ahead of him about 3 blocks. When he first saw the truck his tractor was traveling in the right-hand or north lane. The road at this time and place was spotty, slushy, and bare. It was a bright, sunshiny day.

"Frost saw that he was traveling faster than the dump truck ahead of him and decided to pass the dump truck. He observed that there was no one following him and no one coming from the west or

---

[2] CL 1948, § 617.66 (Stat Ann § 27.915).—Reporter.

opposite direction. He turned on his directional
signals and moved into the left lane and stayed in
the left lane until within about one-quarter block
or 75 feet from the truck. When he was about 75
feet behind the dump truck he saw that it was mov-
ing to its left blocking the left or south lane. When
Frost saw this he applied his brakes lightly and
started to turn to his right to pass the dump truck
on its north side. As he did this his truck skidded
and he was not able to avoid striking the right rear
of the dump truck with the left side of the cab. The
dump truck was in the south lane when it was struck.
When the impact occurred the Frost truck spun
around and rolled into the ditch on the north side
of the road. No signal of an intention to turn left
was given by Ketola by either his hand or left
directional signal lights.[3] The dump truck driven
by Ketola went about 117 feet off the shoulder of
the road where it overturned falling on the driver
Emil Ketola."

The first question presented on appeal is whether
the trial judge should have granted defendants' suc-
cessive motions for directed verdict and thereafter
for judgment notwithstanding verdict. The second
is whether the trial judge erred in refusing to pre-
sent to the jury, for answer, certain of defendants'
proposed special questions. The third is whether
the *jury* erred in answering (the wrong way for
defendants) one of defendants' submitted special
questions. The fourth is whether the trial judge
erred "in charging the jury as to the rear-end colli-
sion statute." The final question is whether defend-
ant Allied Van Lines, Inc., was "legally liable for
the acts and conduct of defendant William Dolan
Frost."

---

[3] This stated fact is disputed. The jury found that Mr. Ketola
did give a signal. See division "Second," *post.*

*First:* The appendices disclose no merit in defendants' respective motions for directed verdict and for judgment notwithstanding verdict. As the foregoing statement of facts rather clearly depicts, the questions of negligence and causation as charged by plaintiff against the defendants, and of contributory negligence as charged by defendants against the decedent, were for jury consideration. The jury was fully justified in resolving these questions in plaintiff's favor, whether the decedent did or did not signal intention of "edging over," as he seems to have done, to the south side of the pavement preparatory to entry into the county road garage premises. He was driving in a village and was not called upon, at risk of being judged contributorily negligent as a matter of law, to ascertain or foresee that defendant Frost would approach from the left rear and then from the right rear in apparently impatient effort (this is on favorable view of course) to "get on through." And as for evidence of causal negligence on the part of defendant Frost, counsel for appellants make no serious claim of absence of such proof.

The main question, going to liability in the case, was whether plaintiff's decedent should be judged or found guilty of contributory negligence. Here causation rises to the fore, it being manifest on favorable-to-plaintiff view that the defendant Frost was warned well ahead of any need for emergency action, by a continuously available view of the county road truck ahead and of its Frost-described movements, that the truck "was moving to its left blocking the left or south lane." Frost thereupon "applied his brakes lightly" and started to turn to the north side of the pavement to pass the county road truck on the right. Then he found his truck-tractor going into a skid, on the partly slushly pavement he had been driving over. Finally came the collision of

the left side of his cab with the right rear of the county road truck.

In variant circumstances of fact the stated question has been before this Court many times in recent years. There is no occasion for present review of the cases or of the rule of favorable view, or of the recent effect of successive rules of court which have transferred from the plaintiff to the defendant the burden of persuasion respecting contributory negligence. All that is well known. We hold that defendant Frost's testimony made an issue of fact as to negligence and proximate causation as charged by the parties and that the trial judge did not err in refusing to instruct a verdict or to enter judgment contrary to the jury's verdict.

*Second:* The second and third questions, outlined above, pertain to statutory special question practice. We consider them together.[4]

Defendant Allied Van Lines, Inc., proposed for submission certain special questions as follows:

(1) "Was Emil Ketola's leaving the west bound lane without giving a signal to defendant William D. Frost approaching from the rear a contributing cause of the accident?

(2) "Was Emil Ketola's failure to keep a proper lookout for the defendant William D. Frost approaching from the rear a contributing cause of this accident?

(3) "Did Allied Van Lines, Inc., have exclusive use of the vehicle owned and operated by defendant,

---

[4] This is probably the last appeal presenting questions under the statutory practice governing special interrogatories. See CL 1948, § 618.39 (Stat Ann § 27.1019). Under the statute, provided the special questions proffered by counsel were proper as to form and substance, the trial judge was mandatorily required to submit them to the jury. See *Zucker* v. *Karpeles*, 88 Mich 413, 426 and *Tyler* v. *Wright*, 188 Mich 561, 567, 568. Whether special questions calling for special verdicts are to be submitted to the jury is now a matter of judicial discretion. See GCR 1963, 514. When GCR 1963, 514 is employed, the former (statutory) requirement of a general verdict is eliminated.

William D. Frost at the time of the accident for a period greater than 30 days?

(4) "Was defendant William D. Frost's trip from Minneapolis, Minnesota to Sault Ste. Marie, Michigan and return made for personal reasons of defendant William D. Frost and for the benefit of Frost Moving and Storage?

(5) "Was defendant William D. Frost en route from Sault Ste. Marie, Michigan to K. I. Sawyer Air Base near Gwinn to negotiate with Morris Woodbridge of the United States Air Force on December 7, 1959 at the time of the accident for the sole benefit of the Frost Moving and Storage?"

Appellant William Dolan Frost proposed for submission certain additional special questions as follows:

(2) "Did Emil Ketola leave the westbound lane without giving a signal to defendant William Dolan Frost approaching from the rear?

(5) "Was plaintiff's decedent Emil Ketola, guilty of negligence that contributed to the accident?"

The trial judge refused to submit all of the aforesaid. Defendants allege error on such account. The trial judge did submit the following question, proposed by defendant William Dolan Frost, to which the jury answered "Yes":

(1) "Did Emil Ketola give a signal for a left turn into the driveway of Schoolcraft county garage property?"

The last quoted question, and the jury's answer thereto, are considered first. Defendants say the *jury* erred in agreeing upon and reporting its affirmative answer to such question. They say no testimony supports the answer. Plaintiff's counsel, responding, point to an answer which was given by defendant Frost in response to a question by his counsel. The question was whether he, Frost, saw

"any lights on the county vehicle." Frost's answer was:

"There were no lights lit on the county vehicle. The only time we did see any lights, signals, anything that would indicate them as being in good condition was in the straight line of impact."

This somewhat ambiguous testimony may well have convinced the jury, the collision having occurred in broad daylight and there being no suggested reason for the turning on by Mr. Ketola of the regular rear lighting equipment, that Mr. Ketola at some stage had turned on one of the rear signal lights. It did in any event justify the jury's affirmative answer to the special question. True, Mr. Frost's answer was fruitful of variant inferences. That, however, exhibits no reversible fault of the trial judge. It may be that Mr. Frost intended to say that, if a rear signal light was operating, it was not turned on until the last untimely second or so, or, possibly, that the rear signal equipment of the county road truck was not in good order (as to cleanliness or otherwise) and hence could not be seen in operation until too late for reasonable heed. But all such inferences, whether conjectural in whole or in part, were for the jury. No motion to strike Mr. Frost's said answer, or effort to draw clarifying testimony from him, was made at any time. The jury accordingly was entitled to appraise it, with the rest of the testimony, for the purpose of discussing and agreeing upon a "yes" or "no" answer to the submitted question.

To the above we add that, if a *jury* can be said to have erred in answering a judicially submitted special question, such error standing alone will not constitute reversible error. The question was prepared by defense counsel. The fact of motion for its submission to the jury must be taken as an admis-

sion that the question posed—for jury answer—an issue of fact created by the proof. If, as counsel presently contend, no evidence supported the jury's said answer, then the question was out of order and a request to charge should have been submitted, reciting in so many words that the proof affirmatively disclosed that the decedent had failed to give a signal or, in the alternative, that no evidence had been received from which the jury could find that the decedent had given a signal. No reversible error appears here.

Turning now to the quoted questions which the trial judge did not submit to the jury.

Defendant Allied Van Lines' question (1) was premised upon a disputed fact; that Mr. Ketola did not give a turning or change of direction signal. For that reason the question was improper. Too, the question irrespective of such premise called for that which at best was a mixed question of law and fact. On that separate account it was improper. See *Banner Tobacco Company* v. *Jenison,* 48 Mich 459, which case was followed in *Carpenter* v. *Baltimore & O. R. Co.* (CCA 6), 109 F2d 375, 379 and later in *May* v. *Goulding,* 365 Mich 143, 148, 149; also *McClelland* v. *Scholz,* 366 Mich 423, *Reetz* v. *Rigg,* 367 Mich 35, and *Prentis* v. *Michel,* 368 Mich 182.

For the same reason—that of erroneous demand for special jury answer of part or whole legal questions—defendant Allied Van Lines' proposed questions (1) and (2), and defendant Frost's proposed question (5), were objectionable and so were properly rejected by the trial judge. As for defendant Frost's proposed question (2), a counterpart thereof (quoted above) was submitted to and answered by the jury. If the latter was to be submitted, and it was, the trial judge did not err in refusing to submit said question (2).

*Third:* The remaining issue of reviewable substance is presented by defendants' stated question 7:

"Was Allied Van Lines, Inc., legally liable for the acts and conduct of defendant William Dolan Frost?"

The position appellants take with respect to this question appears succinctly in their brief. The brief proceeds:

"Sec. 9.1837, Stat Ann,[5] is pertinent to this question. This section reads:

" 'Owner means: (a) Any person, firm, association or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period of greater than 30 days.'

"Allied Van Lines, Inc., had a lease arrangement with defendant Frost which provided in part as follows:

" 'The possession and control of the said vehicle or vehicles hereby leased shall, for the period of this lease, be vested exclusively in the lessee, and the lessee shall have exclusive supervision and control over the operation of same and over said drivers and helpers, including the time and place of arrival, departure and detention and routing and manner of operation during that period, provided, however, that at such times during the term of this lease as the lessee may not require the said vehicle or vehicles to be used in the lessee's business, the lessor may use the said vehicle or vehicles in its own business.'

"It is the contention of defendant Allied Van Lines, Inc., that it is not an owner within the meaning of the statute because of the proviso in the above quotation from the lease:

" 'provided, however, that at such times during the

---

[5] CLS 1961, § 257.37 (Stat Ann 1960 Rev § 9.1837).—REPORTER.

term of this lease as the lessee may not require the said vehicle or vehicles to be used in the lessee's business, the lessor may use the said vehicle or vehicles in its own business.'

"The testimony adduced at the trial showed that at no time did Allied Van Lines, Inc., have exclusive possession of the leased equipment."

By the quoted paragraph of the lease, defendant Allied Van Lines as lessee became statutory "owner" of the truck-tractor defendant Frost was driving. This fatal collision occurred, during the term of the lease, on a public highway. Defendant Allied Van Lines is therefore liable for defendant Frost's negligence as found by the jury, regardless of Frost's provided right to use the truck-tractor independently, for the purposes of any separate business of his own, "at such times" as the lessee might not "require" the unit to be used in its business. The said lessee's "exclusive use" of the unit was, under the statute and the proviso, no less "exclusive" than if the proviso had been left out of the lease, the lessee having the "exclusive" right to say when, if at all, it did not "require" such unit.

The interpretation of lease sought here by defendant Allied Van Lines would leave the fact of legal ownership, of heavy highway motor transports doing interstate and intrastate business on manifest schedules, in a state of daily "on-again off-again" doubt. We are not disposed to interpret and apply these or like contractual provisions to any such end, the public interest considered.

To conclude discussion of stated question 7: The truck-tractor defendant Frost was driving at the time of collision was "owned" by defendant Allied Van Lines, it having been rented to and leased by the latter within the statutory definition. So, whether defendant Frost was or was not engaged at the

time in carrying out a purely personal mission, defendant Allied Van Lines, Inc., was liable as such owner "for the acts and conduct of defendant William Dolan Frost." *Moore* v. *Palmer,* 350 Mich 363.

In view of conclusions reached above no other question requires discussion. Judgment affirmed. Costs to plaintiff.

T. M. KAVANAGH, C. J., and SOURIS and ADAMS, JJ., concurred with BLACK, J.

SMITH, J., concurred in result.

DETHMERS, J. (*concurring*). I concur with Mr. Justice BLACK in affirmance for the several reasons stated in his opinion, except for one. I agree that a requested special question is improper when "premised upon a disputed fact" to which dispute it does not seek, but assumes, the answer. I do not agree that when the facts are undisputed or found by the jury to be established concerning the occurrence of certain actions or inactions, a special question as to whether these constituted negligence, contributory negligence, or a proximate cause is improper on the theory that it calls for a determination of law or mixed law and fact rather than of fact. What I wrote rather ineptly on that subject in *McClelland* v. *Scholz,* 366 Mich 423, I attempted to clarify, if possible, in *Prentis* v. *Michel,* 368 Mich 182, 188. For the reasons stated in my dissenting opinion in *Prentis,* I am not now willing to go along with what Mr. Justice BLACK has written in the instant case to the effect that questions directed to the above mentioned subjects are questions of law or mixed fact and law rather than of

fact only. Nevertheless, as indicated, I concur in affirmance.

KELLY, J., concurred with DETHMERS, J.

O'HARA, J., did not sit.