**TRANSPORT INSURANCE COMPANY, a Texas corporation, Plaintiff-Appellee,**

v.

**MICHIGAN MUTUAL LIABILITY INSURANCE CO., a Michigan corporation, Defendant-Appellant.**

**No. 72–1850.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 12, 1974.

Decided May 7, 1974.

Lawrence A. Bohall, Detroit, Mich., for defendant-appellant; Martin, Bohall, Joselyn, Halsey, & Rowe, Detroit, Mich., on brief.

William P. Cooney, Detroit, Mich., for plaintiff-appellee; Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, Detroit, Mich., on brief.

Before EDWARDS, McCREE and LIVELY, Circuit Judges.

PER CURIAM.

This diversity action involves a dispute between two insurance companies growing out of a fatal highway accident which took place in 1959. A truck trac-

tor owned by William Frost and leased to Allied Van Lines (Allied) collided with a small truck being operated by Emil Ketola, who died as the result of injuries received in the collision. Frost had completed a trip for Allied and unloaded in Minneapolis on Friday and agreed to pick up another Allied load in Minneapolis the following Tuesday. He left the trailer in Minneapolis and returned to his home in Sault Sainte Marie for the weekend. As he was returning to Minneapolis to pick up the next Allied load the accident occurred in Schoolcraft County, Michigan. He had planned to make a stop enroute to check on personal business, but had not reached the turnoff for this stop when he collided with the Ketola truck.

Transport Insurance Company (Transport) had in force a policy in which Allied was the named insured and agents "thereof . . . engaging in the business" of Allied were additional insureds. This policy provided coverage of $1,000,000 for bodily injury or death. Michigan Mutual Liability Insurance Co. (Michigan Mutual) also had in force a policy by which it provided Frost with liability coverage with limits of $25,000 for each bodily injury or death claim. In connection with its policy Michigan Mutual issued a certificate to Allied by which it agreed to conduct investigations, negotiate settlements and defend or settle suits brought against Allied "as the result of an occurrence arising out of operations conducted by the Named Insured [Frost] while not engaging in the business of [Allied]." The certificate also required Michigan Mutual to make certain payments in connection with such litigation. Frost was an agent of Allied within the meaning of the Transport policy.

Suit was filed in a Michigan court by Ketola's estate against Frost and Allied and the Declaration alleged that at the time and place of the accident Frost "was engaged in carrying out the business and affairs of the said Allied Van Lines Inc. . . ." This particular allegation was denied by Allied and admitted by Frost in their separate answers. The jury returned a verdict for $75,000 in favor of the plaintiff and against both defendants. In denying Allied's motion for judgment n.o.v. the trial judge held that Allied was an owner of the tractor by virtue of a Michigan statute which treated a lessee for a period of more than 30 days as the owner of a vehicle and that:

> Since Allied Van Lines were deemed the owner, Frost was their agent. He was in the scope of his employment, returning to Minneapolis on a direct route at the time of the accident. He was engaged in service for them even though the cost of this trip would have to be borne by Frost himself. His riding on the road at this time and place, even though he had an incidental stop proposed at Ishpeming, was on a direct route and for the benefit of the owner, Allied Van Lines. Joint Appendix, p. 39a.

Both parties appealed to the Supreme Court of Michigan which affirmed in Ketola v. Frost, 375 Mich. 266, 134 N. W.2d 183 (1965). The Michigan Court held that Allied was liable as an owner under the statute " . . . whether defendant Frost was or was not engaged at the time in carrying out a purely personal mission. . . ." 375 Mich. at 279–280, 134 N.W.2d at 190. Transport paid the judgment, interest and costs in the total amount of $88,275.76 and brought this action to recover this payment plus other damages, charging a bad faith refusal of Michigan Mutual to defend, negotiate or pay any part of the judgment and expenses. Michigan Mutual denied that it acted wrongfully or in bad faith, asserted that Transport was the primary insurer of the vehicle involved in the accident and denied that Frost was not engaged in the business of Allied.

In denying Transport's motion for partial summary judgment, the district court held it to be a question of fact whether Frost was engaging in the busi-

ness of Allied at the time. A trial was held limited to this issue and the jury answered "was not" to the question, "Do you find that . . . [Frost] . . . was or was not engaged in the business of Allied Van Lines on December 7, 1959 at the time of his collision with the Ketola vehicle. . . . " The jury was then dismissed and the district judge proceeded to try the issue of bad faith without a jury.

Transport introduced evidence, largely consisting of intracompany correspondence which indicated that certain claims personnel and the trial attorney employed by Michigan Mutual felt that Frost was engaged in personal business at the time of the Ketola collision: The failure to acknowledge this and to assume defense of the Ketola suit was the basis of the bad faith claim. The trial court concluded that Michigan Mutual had been guilty of bad faith in refusing to defend and to settle within its limits and entered judgment for the entire amount of the Ketola judgment, even though it was in excess of the limits of the Michigan Mutual policy. Judgment for Transport also included interest and costs and all of Transport's litigation expenses. Transport Ins. Co. v. Michigan Mutual Liability Ins. Co., 340 F.Supp. 670 (E.D.Mich.1972). We affirm in part and reverse in part.

The trial court reasoned that Michigan Mutual was bound to abandon its legal position in the Ketola case because certain employees subjectively concluded that its position was not sound. Regardless of the opinion of these employees, the determination of which insurance company owed the duty to defend the Ketola case was dependent entirely on a resolution of the question of whether Frost was engaged in Allied's business, and it remained unresolved until the jury decided it in the district court. It was not decided in the state courts, and was not so clear-cut as to require summary judgment in the district court. We note that the home office person in charge of the Ketola litigation for Michigan Mutual expressed the opinion early in the proceedings that while Frost went home over the weekend for personal reasons his return trip to Minneapolis (during which the collision occurred) was a business trip. If Frost were held to be engaged both in his own and Allied's business, Transport would have had coverage and the duty to defend the Ketola claim. Its policy provisions cannot be read to require that agents such as Frost be exclusively engaged in Allied's business to be covered. Furthermore, Michigan Mutual's extension of coverage to Allied would not occur if Frost were engaged in a dual capacity, but only if he were not engaged at all in Allied's business.

The first instance in which Michigan Mutual was required to decide whether its policy covered the Ketola claim came with the filing of the suit. As we have pointed out, the Declaration specifically alleged that Frost was engaged in the business of Allied at the time of the collision. The Michigan rule is that the duty of an insurer to defend a claim is measured by the allegations of the pleading in which its insured is sued. Guerdon Industries, Inc. v. Fidelity & Casualty Co. of N. Y., 371 Mich. 12, 123 N.W.2d 143 (1963); Space Conditioning, Inc. v. Insurance Company of North America, 294 F.Supp. 1290 (E.D. Mich.1968), aff'd., 419 F.2d 836 (6th Cir. 1970). The district court recognized this rule, but held that there is an exception which requires an insurer to defend when it knows that a true but unpleaded fact or set of facts brings the claim within coverage of the policy. In the present case, the facts known to Michigan Mutual were also known to Transport. It was not a case where an insured was left without insurance company defense at a time when the company had information which, though not pleaded by the plaintiff, it knew rendered it liable to furnish a defense. Rather, each company filed a separate

answer for its primary insured and furnished counsel who together conducted the Ketola trial and filed a joint brief in the Supreme Court of Michigan. In view of the dispute between the carriers there was no inconsistency in each defending its named insured while insisting that the other owed the duty to appear and defend on behalf of both Allied and Frost. The admission of the allegations that Frost was engaged in Allied's business was consistent with Frost's statements to Michigan Mutual. We hold that Michigan Mutual was not guilty of bad faith in failing to defend Allied in the Ketola trial and, in insisting that Frost was engaged in Allied's business.

While the appeal of the Ketola case was pending in the Supreme Court of Michigan the plaintiff communicated to Transport an offer to settle for $65,000. Transport then contacted Michigan Mutual and offered to pay two-thirds of the $65,000 if Michigan Mutual would pay one-third. Since this amount was within its policy limits, the district court found Michigan Mutual's refusal "wrongful, arbitrary and bad faith." A jury had held both Frost and Allied liable to the Ketola estate, and the trial judge had ruled that Frost was "on a direct route and for the benefit" of Allied at the time of the accident. Furthermore, both insurers and their attorneys believed that they had a good chance of reversal on contributory negligence grounds. In fact, shortly before Michigan Mutual declined this offer, present counsel for Transport wrote to the attorney who had represented Transport in the Ketola trial: "The testimony set out in the record seems to conclusively establish that there were no factual questions as to negligence of defendant or contributory negligence of plaintiff, and, thus, the trial judge should have directed a verdict for you." An earlier offer of the plaintiff to settle for $42,500 was met by a joint counter offer of $22,000, of which Michigan Mutual would have

paid $15,000 and Transport, $7,000. Transport never offered the $17,500 which would have been required to bring the settlement within Michigan Mutual's limits.

■■ An insurance company which reasonably concludes, after investigation or following trial, that a legal defense exists which will preclude liability on the part of its insured is not guilty of bad faith in refusing to settle a case. In Wakefield v. Globe Indemnity Co., 246 Mich. 645, 225 N.W. 643 (1929), the Supreme Court of Michigan stated:

> Undoubtedly, the insurer does not act in bad faith if it refuses settlement in the honest belief that it has a fair chance of victory, or of keeping the verdict within the policy limit, or, upon reasonable grounds, that the compromise amount is excessive, or if it has legal defenses, as yet undetermined by a court of last resort, which fairly seem applicable. . . . 246 Mich. at 652–653, 225 N.W. at 645.

We conclude that the district court's finding that Michigan Mutual was guilty of bad faith in refusing to pay one-third of the settlement offer of $65,000 is clearly erroneous in light of the settled law of Michigan. We believe the only conclusion which may be drawn from all the evidence is that Michigan Mutual's refusal to accede to Transport's demand with respect to the $65,000 offer was not a fraudulent act or one made in bad faith. Bentley v. Farmers' Insurance Exchange, 289 F.2d 59 (6th Cir. 1961).

■ In the absence of bad faith, Michigan Mutual, as primary insurer is liable only for its policy limits of $25,000 of the $75,000 verdict for the death claim. However, the jury determination that Frost was not engaging in the business of Allied rendered Michigan Mutual liable to pay certain expenses as set forth in the certificate issued

by Michigan Mutual to Allied. The decisions on apportionment of defense costs cited by Michigan Mutual are not in point. This is not a case which turns on determination alone of which insurer had primary coverage and which had excess. The extent of liability for expenses is determined by the certificate which provides that Michigan Mutual shall:

\* \* \* \* \* \*

(2) pay all costs for investigation and litigation of claims or suits filed against Allied Van Lines, Inc., Allied Van Lines Terminal Company or Allied Van Lines, Inc. of Indiana.

(3) pay all premiums on appeal or attachment bonds for an amount not to exceed the applicable limit of liability stated in this policy, but without obligation to apply for or furnish such bonds.

(4) pay all litigation costs taxed against Allied Van Lines, Inc., Allied Van Lines Terminal Company or Allied Van Lines, Inc. of Indiana and interest accruing in any suits until the company has paid, tendered or deposited in court such part of the judgment up to the applicable limit of liability stated in this policy.

The judgment of the district court is affirmed with respect to the holding that Frost was not engaged in the business of Allied at the time of the Ketola collision. It is reversed with respect to the holding that Michigan Mutual was guilty of bad faith in failing to defend and to settle the Ketola claim within its policy limits. The case is remanded for determination by the district court of the amount due Transport as subrogee of Allied, limited to $25,000 of the Ketola verdict and such other amounts provided for in the certificate of insurance set out above. Each of the parties will pay its own costs.

So ordered.