COMMERCIAL UNION INSURANCE COMPANY v THE MEDICAL PROTECTIVE COMPANY

Docket No. 66538. Submitted November 1, 1983, at Detroit.—Decided August 6, 1984. Leave to appeal applied for.

Defendant, The Medical Protective Company, was Dr. Merle Berman's primary professional liability insurer and plaintiff, Commercial Union Insurance Company, was Dr. Berman's excess liability insurer. A malpractice action was commenced against Dr. Berman. Defendant managed Dr. Berman's defense. A default judgment was entered and the parties, including plaintiff, settled prior to trial on the issue of damages. Plaintiff brought an action against defendant in the Wayne Circuit Court, alleging bad faith, negligence and breach of fiduciary duty in its handling of the defense. The court, Theodore R. Bohn, J., granted summary judgment for defendant on the grounds that plaintiff did not have a direct cause of action against defendant and, even if it did have a cause of action against defendant based on equitable subrogation, plaintiff was estopped from asserting it by failing to reserve its rights against defendant during settlement. Plaintiff appealed. *Held:*

1. An excess liability insurer may maintain a direct action against the primary liability insurer for bad faith in handling a suit or settlement where the excess insurer is a real party in interest.

2. An excess liability insurer may maintain an action as the

REFERENCES FOR POINTS IN HEADNOTES
[1] 61A Am Jur 2d, Pleading §§ 230, 231.
[2] 44 Am Jur 2d, Insurance §§ 1422, 1789.
Excess carrier's right to maintain action against primary liability insurer for wrongful failure to settle claim against insured. 10 ALR4th 879.
[3, 4] 44 Am Jur 2d, Insurance §§ 1794, 1800.
Right to subrogation, as against primary insurer, of liability insurer providing secondary insurance. 31 ALR2d 1324.
[5] 28 Am Jur 2d, Estoppel and Waiver §§ 33-35.
[6] 28 Am Jur 2d, Estoppel and Waiver § 154.
[7] 28 Am Jur 2d, Estoppel and Waiver § 53.
[8] 44 Am Jur 2d, Insurance § 1399.

equitable subrogee of its insured against the primary liability insurer for bad faith in handling a suit or settlement.

3. Whether plaintiff waived its rights against defendant or is estopped to assert them is a factual issue to be determined by the trier of fact. A waiver of rights is a knowing and intentional relinquishment of those rights. Estoppel by silence to assert a right applies only where the party standing by and concealing its right showed such gross negligence as to have encouraged or influenced the other party, who was wholly ignorant of its adversary's claim, to act to its disadvantage. Plaintiff asserts that it made clear and strenuous objections to the defendant's handling of the case and the settlement and plaintiff did notify defendant that, if the case went to trial, plaintiff would seek recovery from defendant of sums in excess of the policy limits. Summary judgment for these reasons was improper.

4. Bad faith rather than mere negligence on the part of the insurer is necessary to sustain an action for breach of the insurer's duty to settle. Plaintiff alleged both bad faith and negligence. Summary judgment on the basis that plaintiff's subrogation claim sounded in negligence rather than bad faith was improper. The existence of bad faith is a factual issue.

Reversed and remanded.

1. APPEAL — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM — COURT RULES.

The Court of Appeals, in reviewing a grant of summary judgment on the basis that the plaintiff failed to state a claim upon which relief could be granted, must consider only the complaint, accept as true all well-pled allegations in the complaint, and determine whether plaintiff's claims are so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery (GCR 1963, 117.2[1]).

2. INSURANCE — ACTIONS — EXCESS LIABILITY INSURERS — BAD FAITH.

An excess liability insurer may maintain a direct action against the primary liability insurer for bad faith in handling a suit or settlement where the excess insurer is a real party in interest.

3. SUBROGATION — INSURANCE.

An insurer becomes subrogated to the rights of the insured where it pays a claim and its liability is arguably secondary to that of a primary insurer; resorting to subrogation in such an instance is the preferable method of handling the dispute because it permits an injured person to recover for his injuries without

delay while the insurers thereafter iron out their respective liabilities.

4. INSURANCE — SUBROGATION — ACTIONS — EXCESS LIABILITY INSURERS — BAD FAITH.

An excess liability insurer may maintain an action as the equitable subrogee of its insured against the primary liability insurer for bad faith in handling a suit or settlement.

5. ESTOPPEL — EQUITY.

The doctrine of estoppel rests upon a party's having made direct or indirect assertions, promises, or assurances upon which another has acted under such circumstances that he would be seriously prejudiced if the assertions were allowed to be disproved or the promises or assurances withdrawn, but the doctrine should be applied only where the facts calling for it are unquestionable and the wrong to be prevented undoubted.

6. WORDS AND PHRASES — "WAIVER".

A waiver of rights is a knowing and intentional relinquishment of those rights.

7. ESTOPPEL — ESTOPPEL BY SILENCE.

Estoppel by silence to assert a right applies only where the party standing by and concealing its right showed such gross negligence as to have encouraged or influenced the other party, who was wholly ignorant of its adversary's claim, to act to its disadvantage.

8. INSURANCE — ACTIONS — DUTY TO SETTLE — BAD FAITH.

Bad faith rather than mere negligence on the part of the insurer is necessary to sustain an action for breach of the insurer's duty to settle; the existence of bad faith is a factual issue.

*MacArthur & Cheatham, P.C.* (by *Brian J. Doren),* for plaintiff.

*Moll, Desenberg, Bayer & Behrendt* (by *Jon P. Desenberg* and *John M. Toth),* for defendant.

Before: BRONSON, P.J., and SHEPHERD and J. P. SWALLOW,* JJ.

SHEPHERD, J. Summary judgment was granted

* Circuit judge, sitting on the Court of Appeals by assignment.

by the trial court in favor of defendant The Medical Protective Company, apparently pursuant to GCR 1963, 117.2(1). Plaintiff, Commercial Union Insurance Company, appeals as of right.

This matter originated with a 1974 medical malpractice action against Dr. Merle Berman. Defendant was Dr. Berman's primary professional liability insurer with a policy limit of $200,000. Plaintiff was Dr. Berman's excess professional liability insurer. The defense in the malpractice action was managed by defendant. A default judgment was ultimately granted against Dr. Berman in the malpractice suit based on Dr. Berman's failure to answer interrogatories. A motion to set aside the default was denied. Prior to trial on the sole issue of damages, the parties settled for $350,-000. Defendant contributed $190,000, Dr. Berman's estate (he had committed suicide after entry of the default judgment) contributed $10,000, the hospital named as a codefendant in the suit contributed $25,000, and plaintiff contributed $125,000.

Plaintiff and defendant are in disagreement as to the facts and dates surrounding the default and settlement negotiations. However, plaintiff filed the present action against defendant alleging that defendant had acted in bad faith in handling the underlying defense of the malpractice claim and in failing to attempt to settle timely within its policy limit, resulting in excess exposure to plaintiff here, or, alternatively, that defendant had violated its fiduciary duty to its insured by allowing him to go into default and failing to move timely to set aside the default judgment. Defendant moved for summary judgment, apparently on the ground that plaintiff had failed to state a claim upon which relief could be granted. The trial court granted defendant's motion on two gounds: first, the court

ruled that plaintiff did not have a direct cause of action against defendant; second, the court found that, even if plaintiff had a cause of action based on its equitable subrogation to the insured, plaintiff was estopped from asserting it by failing to reserve its rights against defendant during settlement.

In reviewing a motion for summary judgment for failure to state a cause of action, the court considers only the complaint and must accept as true all well-pled allegations in the complaint. The court must then determine whether the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right of recovery. *Hansman v Imlay City State Bank,* 121 Mich App 424; 328 NW2d 653 (1982). Such a motion tests only the legal sufficiency of the claim as it appears in the pleadings. *Gatewood v Detroit,* 121 Mich App 57; 329 NW2d 34 (1982).

We must first consider, therefore, in determining whether plaintiff's claim was clearly unenforceable as a matter of law, whether plaintiff could bring a direct action for bad faith against defendant.

It is clear that the insurer owes the insured a duty of good faith. Thus, the insured has a direct cause of action against the insurer for a breach of this duty which exposes him to excess liability. *City of Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW 643 (1929); *Jones v National Emblem Ins Co,* 436 F Supp 1119 (ED Mich, 1977). This duty, however, has not yet been specifically extended in Michigan to an excess insurer who assumes this excess liability.

In *Lisiewski v Countrywide Ins Co,* 75 Mich App 631; 255 NW2d 714 (1977), *lv den* 401 Mich 840 (1977), however, this Court ruled that a judgment creditor could not maintain a direct action against

a primary insurer for the latter's breach of duty to the insured. See, also, *Rutter v King*, 57 Mich App 152; 226 NW2d 79 (1974). In *Lisiewski*, the judgment creditor had received payment on the judgment up to the policy limit from the insurer. She then tried to recover the unpaid amount of the judgment over the policy amount directly from the insurer on the theory that the insurer had breached its duty of good faith in failing to settle within the policy limits. This Court refused to recognize a direct cause of action in the creditor, however, for two reasons: first, the insurer's liability, as well as its obligation to negotiate a settlement in good faith, ran to its policy holder, not to third-party strangers to the contract; second, the insurer's refusal to settle within the policy limits had benefited, not injured, the judgment creditor. We note that the second reason clearly does not apply in the instant case, since plaintiff was harmed, not benefited, by any breach on the part of defendant.

The Sixth Circuit Court of Appeals has also indicated in dicta that a claim of a direct action was difficult to conceptualize where there was no contractual relation between the primary and excess insurer. The argument was addressed only briefly in a footnote, however, and was analyzed on the basis of the facts presented in that case. *Valentine v Liberty Mutual Ins Co*, 620 F2d 583, 584 (CA 6, 1980). The court instead chose to base its decision in *Valentine* on the theory agreed upon by both parties: that of equitable subrogation to the rights of the insured.

We are not convinced on the strength of these two judicial pronouncements, however, that no direct action may be undertaken by the excess carrier against the primary insurer. In *Jones v*

*National Emblem Ins Co, supra,* the federal court ruled, construing Michigan law, that a judgment creditor could directly sue the judgment debtor's insurer for bad faith in handling a suit or settlement. The court there found that, even without a duty owed individually to him, the judgment creditor was a real party in interest and public policy dictated the allowance of a direct cause of action. By "recogni[zing] the cause of action in one who has the motivation to pursue it, the insurer is encouraged to conduct settlement negotiations responsibly". 436 F Supp 1122. While noting that neither case is squarely on point, we find *Jones* to be the more fully reasoned opinion. While *Lisiewski's* analysis stops short upon finding that no duty existed, *Jones* seeks to identify the real party in interest. *Valentine,* of course, offers mere dicta. Clearly, the real party in interest in situations such as that presented in the instant case is the excess insurer. The insured generally assumes no additional burden from a primary insurer's breach of duty where an excess liability insurer stands in the wings; it is that excess insurer alone who is harmed and bears any increased costs resulting from the primary insurer's bad faith. The excess insurer, then, is not in the same position as the judgment creditor of *Lisiewski* or *Jones,* who stands in the shoes of the insured and seeks to recover that which is owed arguably to the insured and to itself. The excess insurer must pay any amounts owed by the insured in excess of that provided by the primary insurer. The excess insurer's liability, therefore, arises only when damages owed exceed those payable by the primary insurer —an excess which may actually be caused by the primary insurer's bad faith.

In addition to concluding that a direct action is

justified where, as here, the excess insurer is the real party in interest, we also find that other policy reasons support such an action. If the primary insurer may not be held accountable for a breach of good faith in conducting an insured's defense or negotiating settlement, excess insurance premiums may escalate. Since the insured will not bring an action if he has not suffered any loss, the primary insurer will suffer no consequences from breaching its duty. As a result, excess insurers would likely respond to this possible additional liability by raising insurance premiums. This in turn would discourage the purchase of excess insurance, thereby exposing an insured to more liability and reducing an injured party's chances of recovery of large settlements or judgments which the insured may not be able to pay without excess coverage.

Although we find a direct action to be most appropriate here, we also find that plaintiff was equitably subrogated to the insured and thus had an alternative cause of action against defendant. Legal or equitable subrogation substitutes one person in place of another with reference to a lawful claim, demand or right so that he who is substituted succeeds to the rights of the other. *Foremost Life Ins Co v Waters,* 88 Mich App 599, 603; 278 NW2d 688 (1979), *rev'd on other grounds,* 415 Mich 303; 329 NW2d 688 (1982), quoting Black's Law Dictionary (4th ed), p 1595. Legal or equitable subrogation should be applied where injustice would follow its denial. *Smith v Sprague,* 244 Mich 577; 222 NW 207 (1928).

Equitable subrogation of insurers to their insureds has been allowed in Michigan. In the context of auto insurers, this Court has held that, when an insurer whose liability is arguably sec-

ondary to that of a primary insurer pays a claim, it becomes subrogated to the rights of the insured against the primary insurer. *Federal Kemper Ins Co v The Western Ins Cos,* 97 Mich App 204, 208; 293 NW2d 765 (1980); *Farmers Ins Group v Progressive Casualty Ins Co,* 84 Mich App 474, 484; 269 NW2d 647 (1978), *lv den* 405 Mich 832 (1979). Many jurisdictions have specifically applied the doctrine of equitable subrogation to excess insurers bringing suits against primary insurers for bad faith settlements. Anno: *Excess Carrier's Right to Maintain Action Against Primary Liability Insurer for Wrongful Failure to Settle Claim Against Insured,* 10 ALR4th 880; also see *e.g., Home Ins Co v Royal Indemnity Co,* 68 Misc 2d 737; 327 NYS2d 745 (1972), *aff'd* 39 App Div 2d 678; 332 NYS2d 1003 (1972); *Continental Casualty Co v United States Fidelity & Guaranty Co,* 516 F Supp 384 (ND Cal, 1981). *Western World Ins Co v Allstate Ins Co,* 140 NJ Super 338; 356 A2d 83 (1976), cited favorably by defendant, was reversed in part, with the court holding that the primary insurer owed the same duty to the excess insurer as it owed to the insured. 150 NJ Super 481; 376 A2d 177 (1977).

Furthermore, federal courts applying Michigan law have also recognized a claim for subrogation by an excess insurer. *Transport Ins Co v Michigan Mutual Liability Ins Co,* 340 F Supp 670 (ED Mich, 1972), *rev'd in part on other grounds,* 496 F2d 265 (CA 6, 1974); see also *Valentine, supra,* where the court implicitly recognized equitable subrogation of an excess insurer to an insured's claim of bad faith settlement against the primary insurer by reaching the merits of the suit. Concededly, in *Valentine* the excess insurer was also an assignee of the insured. The court, however, did not distinguish the assignment from the equitable subroga-

tion and did not reject the excess insurer's status as an equitable subrogee.

We note that, in granting summary judgment, the trial court here did not rule that plaintiff did not have a claim of equitable subrogation but rather that plaintiff was estopped for other reasons from seeking reimbursement from defendant on such grounds. Upon remand, therefore, we hold that plaintiff is entitled to assert a direct action against defendant and/or equitable subrogation to the rights of the insured. We must first consider, however, whether the trial judge correctly ruled that plaintiff was estopped from claiming against defendant.

The doctrine of estoppel rests upon a party's having made direct or indirect assertions, promises, or assurances upon which another has acted under such circumstances that he would be seriously prejudiced if the assertions were allowed to be disproved or the promises or assurances withdrawn, but the doctrine should be applied only where the facts calling for it are unquestionable and the wrong to be prevented undoubted. *Maxwell v Bay City Bridge Co,* 41 Mich 453; 2 NW 639 (1879).

Defendant claims that plaintiff voluntarily participated in the settlement process and ultimately paid $125,000 of the award without reserving its rights against defendant or implying that its contribution was contingent upon its right to later proceed against defendant for bad faith. Plaintiff's failure to reserve its rights, claims defendant, resulted in plaintiff's waiver of its rights and plaintiff was therefore estopped from maintaining the later action.

Plaintiff, on the other hand, claims that it made it clear to defendant that it considered settlement

to be the only viable alternative under the circumstances. Plaintiff maintains that it strenuously voiced its objections to the way defendant handled the case, demanded that defendant tender its policy limits in settlement and notified defendant that it would look to defendant for recovery of sums in excess of the primary policy limit. In a letter before settlement, plaintiff notified defendant that, if the case went to trial, it would seek recovery from defendant for any sums in excess of the primary policy. Although the letter refers to trial, not settlement, it weakens defendant's disavowal of plaintiff's claim that it would seek recovery from defendant.

In order for plaintiff to waive its rights against defendant, it must have intentionally and knowingly relinquished those rights. *American Locomotive Co v G Chemical Research Corp,* 171 F2d 115 (CA 6, 1948), *cert den* 336 US 909; 69 S Ct 515; 93 L Ed 1074 (1949). Plaintiff's arguments clearly contest such an intention. Alternatively, for estoppel by silence, the party standing by and concealing its rights must have, by its conduct, shown such gross negligence as to have encouraged or influenced the opposite party, who was wholly ignorant of its adversary's claim, to act to the latter's disadvantage. *Grand Trunk W R Co v H W Nelson Co,* 116 F2d 823 (CA 6, 1941), *reh den,* 118 F2d 252 (1941). An essential element of estoppel is that a party knowingly permitted the opposite party to act to its own disadvantage. *Bentley v Cam,* 362 Mich 78; 106 NW2d 528 (1960). Estoppel should only be applied where the facts are unquestionable, unambiguous, and unequivocable. *Maxwell, supra; Fredenburg v Lyon Lake M E Church,* 37 Mich 476 (1877). If the factual disputes regarding disclosure of intent during settlement negotia-

tions were resolved in favor of plaintiff, estoppel would not preclude an action against defendant. Since these were factual issues yet to be resolved, summary judgment under GCR 1963, 117.2(1) was inappropriate.

The trial court also based its finding of estoppel on the failure of the insured to cooperate in the underlying litigation. This could only act as a bar to a subrogation action, not a direct action, however, since only in an equitable subrogation action would plaintiff stand in the insured's shoes. A direct action would be unaffected by the insured's breach. Furthermore, since insufficient information exists on the record before us to determine the extent of any breach by the insured, the matter is one in need of factual development and renders summary judgment under GCR 1963, 117.2(1) inappropriate.

Finally, the trial court found that plaintiff's equitable subrogation claim against defendant sounded in negligence rather than bad faith and thus could not survive. "Bad faith" on the part of the insurer is necessary to sustain an action for breach of the insurer's duty to settle. Negligence is not enough. *City of Wakefield v Globe Indemnity Co, supra.* Bad faith itself is a factual issue. See *Jones v National Emblem Ins Co, supra.* Plaintiff's complaint, in ¶¶ 8 and 9, alleges negligence and bad faith. Several of the allegations within ¶ 8 sound in bad faith, particularly the allegations of instructing counsel to act contrary to the best interests of its insured and of misrepresenting the extent of its coverage.

The trial court erred, therefore, in ruling that plaintiff's claim sounded in negligence rather than bad faith. Once plaintiff made factually supported allegations of bad faith, the matter was a factual issue and summary judgment was inappropriate.

We therefore reverse the trial court's order granting summary judgment in favor of defendant and remand for trial. Plaintiff may proceed in a direct action against defendant or as the equitable subrogee of the insured.

Reversed and remanded.

Costs to abide the final outcome.