**CONTINENTAL CASUALTY COMPANY, an Illinois Corporation, in its own right and as Subrogee of Edward C. Levy Company, a Michigan Corporation, Plaintiff,**

**v.**

**GREAT AMERICAN INSURANCE COMPANY, an Ohio Corporation, Defendant.**

No. 86 C 3938.

United States District Court, N.D. Illinois, E.D.

March 15, 1990.

John Kuhn, Brinton & Bollinger, Chicago, Ill., for plaintiff.

William V. Johnson, Johnson, Cusack & Bell, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The bell has sounded, and Round Four of this ineptly fought bout between Continental Casualty Company ("CCC") and Great American Insurance Company begins. CCC is the excess liability insurer and contractual subrogee of Edward C. Levy Com-

pany; Great American is Levy's primary insurer. In Round One, the parties filed cross-motions for summary judgment, motions which the court described in gentle terms as peculiar. See *Continental Cas. Co. v. Great American Ins. Co.*, 711 F.Supp. 1475, 1477 (N.D.Ill.1989). The reason—if one could call it that—for the perplexing posture of the parties in Round One is apparent only in hindsight. CCC had suspected Great American of not paying its entire liability under a policy with Levy, leaving CCC to pay purportedly more than its share. Yet CCC must not have been sure of this, so rather than accusing Great American directly of breaching its contract with Levy, CCC sued Great American for breaching its duty of good faith toward CCC. As evidence of Great American's bad faith, CCC claimed among other things that Great American never had tendered the full amount of its liability under its policy with Levy.

This court agreed that Great American had not tendered its policy limits. See *id.* at 1482–84. The court's ruling on this issue didn't end the parties' fight. The court held that there were material issues of fact about Great American's good or bad faith in failing to tender its full amount of coverage. *Id.* at 1486. The court's opinion must have awakened CCC from its slumber. CCC began Round Two swinging, moving for summary judgment on a claimed theory of breach of contract. CCC quickly stumbled, however, as it took no time for the court to observe that CCC had not pleaded breach of contract apart from its claims of breach of good faith.

Having wasted more than the usual amount of their client's resources already, CCC's lawyers approached Round Three carefully. In that round, CCC moved to amend its complaint, and put forth three new theories of relief. CCC won on points in this round, as the court allowed two of CCC's proposed theories. Count 3 of CCC's newest complaint is a claim for breach of contract, by virtue of Great American's failure to tender its entire liability under its primary insurance policy with Levy. CCC claims that it can bring this claim as contractual subrogee of Levy

and as a third-party beneficiary of Great American's policy with Levy. Count 4 of the complaint states a claim of equitable subrogation, by virtue of CCC's having to make up the portion of Levy's liability that Great American has refused to pay.

Now we reach Round Four. CCC has moved for summary judgment on Counts 3–4. The facts it has put forth in favor of its motion are simple, undisputed, and for the most part recounted in this court's earlier opinion: Great American insured Levy under a comprehensive general liability policy. That policy had two separate limits, $1 million each per person, for bodily injury liability and contractual bodily injury liability. Levy paid separate premiums for each. As a result of a workplace accident for which Levy was ultimately held responsible, Levy owed in excess of $2.3 million plus costs and interest to a worker's estate. The final bill for this accident approached $3.9 million. Great American paid $1 million plus $644,638.05 in interest on behalf of Levy to satisfy this judgment. Levy's excess insurance carrier, CCC, paid the balance. CCC's contract with Levy provided in part: "In the event of any payment under this policy, [CCC] shall be subrogated to all [Levy's] rights of recovery therefor against any person or organization...."

■ CCC claims that entry of summary judgment is a simple matter, in light of this court's order in *Continental Cas.*, 711 F.Supp. 1475. CCC first submits that Great American may not contest its liability to CCC under its primary insurance contract, as this court's previous order was final. As it has shown so many times before, CCC does not understand the Federal Rules of Civil Procedure. This court's previous order, one granting summary judgment on certain issues of fact and law, was pursuant to Rule 54(b), Fed.R.Civ.Pro., as it did not resolve all of the issues in this case. By the language of Rule 54(b), a party may seek reconsideration of any such order *"at any time* before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis added) See also *Anderson v.*

*Montgomery Ward & Co., Inc.,* 704 F.Supp. 162, 163 (N.D.Ill.1989) (party may seek reconsideration of issues of fact and law resolved in a Rule 54(b) order for good cause).

■ This issue is moot, as Great American has not challenged this court's prior ruling about its twin coverages of Levy in opposing CCC's current motion for summary judgment. CCC nevertheless is still not entitled to judgment merely on what this court said in its previous order. That order stated only that Great American owed *Levy* under two coverages. The court did not hold that CCC could claim the benefit of Great American's promise to Levy, as CCC itself argued in Round One that Great American owed it the additional coverage only if CCC could prove Great American's bad faith. CCC did not prove bad faith in Round One, so Great American owed CCC nothing at the close of that Round, under CCC's own view of the case.

■ CCC's amendment changes everything. It is undisputed that CCC is Levy's contractual subrogee, by virtue of CCC's excess insurance contract with Levy. CCC also is Levy's equitable subrogee. Under Michigan law,[1] "[e]quitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other," unless the payor is a " 'mere volunteer.' " *Commercial Union Ins. v. Medical Protective,* 426 Mich. 109, 117, 393 N.W.2d 479, 482 (1986), quoting *Smith v. Sprague,* 244 Mich. 577, 579–80, 222 N.W. 207, 208 (1928). This court previously determined that Great American should have paid two coverages, equalling $2 million, instead of one coverage, equalling $1 million, on Levy's behalf. CCC paid Great American's share, and thus under Michigan law CCC now can seek to recover that share.

■ Great American argues that this is not so. It insists that CCC may not prevail against it as Levy's subrogee absent a

showing of Great American's bad faith. Great American refers the court to *Commercial Union Ins. Co. v. Liberty Mut. Ins.,* 426 Mich. 127, 393 N.W.2d 161 (1986) —the Michigan Supreme Court's leading case on the duties of primary insurance carriers towards the excess liability carriers of their insureds. Commercial Union was an excess liability insurer of a television station. Commercial Union sued the station's primary insurance carrier, Liberty Mutual, for failing to settle a case at an amount within Liberty Mutual's limits. The station eventually owed in excess of Liberty Mutual's coverage; Liberty Mutual tendered its policy limit and walked away. Commercial Union premised its suit on *City of Wakefield v. Globe Indemnity,* 246 Mich. 645, 225 N.W. 643 (1929). The court held in that case that when an insured has to pay in excess of his coverage on account of his insurers' bad faith refusal to settle a claim within the limits of his insurance policies, the insured may recover the portion he paid from his insurers—regardless whether the insurers later tendered the full amount of their coverage. Commercial Union was the television station's subrogee, so Commercial Union had to prove the same thing the station would have had to prove had the station itself sued its primary carrier. Commercial Union thus had to prove Liberty Mutual's bad faith in refusing to settle the station's suit.

Contrary to Great American's suggestion, *Liberty Mutual* does not teach that a subrogee must show bad faith in order to recover from a party. Rather, it shows that one must examine the relationship between that party and the subrogor. This court thus must look at what Levy's rights would have been against Great American had Levy lacked excess liability insurance. Regardless of Great American's intention in refusing to settle the claims against Levy at issue in this case, one thing is clear: Great American was contractually obligated to pay $2 million of liability on behalf of Levy. Great American tendered half that amount. In order for Levy to

---

**1.** The parties continue to imply that Michigan law controls this dispute. See *Continental Cas.,*

711 F.Supp. at 1480 n. 5.

recover the rest, Levy would have to prove only Great American's promise to pay $2 million, a breach of that promise, and Levy's resulting damage. See *Kewin v. Massachusetts Mutual Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980). Good faith would not be an issue: the question is one of promises made, promises broken.

Whether it steps into them by contract or by equitable fictions, CCC fills Levy's shoes. CCC has to prove what Levy would have to prove—nothing more, nothing less. CCC has proven that Great American broke its promise to Levy by not tendering two coverages, and CCC has suffered damage as a result. This is all that CCC has to prove to make its case under Counts 3–4. Great American's intentions toward Levy and CCC are irrelevant.

That CCC has made out a case for recovering under Counts 3–4 does not mean that CCC is entitled to summary judgment on those counts, however. Great American argues that notwithstanding its contract to pay Levy (and by extension, CCC) two coverages, this court should estop CCC from seeking recovery of the untendered coverage by virtue of CCC's acquiescence in Great American's single tender. Great American submits that when CCC wrote its excess insurance policy for Levy in 1969, it noted next to Great American's policy: "General Liability. Bodily Injury Liability or Property Damage Liability both combined including products liability. $1,000,-000. each occurrence." Fourteen years later, while Levy's liability was being litigated in the Michigan courts, CCC filed two affidavits which stated that Levy's liability was insured "by a primary insurance policy issued by Great American Insurance Company in the amount of One Million ($1,000,-000) Dollars...." Great American contends that CCC made no mention about dual coverages until January 1986.

This argument has its flaws, but it is enough to defeat CCC's motion for summary judgment. In order to establish estoppel by waiver under Michigan law, Great American must prove among other things that CCC intentionally and knowingly relinquished its rights against Great American by its conduct. See *Commercial Union Ins. v. Medical Protective Co.*, 136 Mich.App. 412, 356 N.W.2d 648 (1984), aff'd in pertinent part, 426 Mich. 109, 393 N.W.2d 479 (1986).[2] CCC hotly contests whether its policy and its 1983 affidavits amount to an intentional, knowing waiver of rights, but the court may not resolve this controversy on the present motion.

The court denies CCC's motion for summary judgment on Counts 3–4 of the Second Amended Complaint. The court directs Great American to file the materials requested in footnote 2 of this opinion within ten days.

---

2. Great American would also have to show detrimental reliance on CCC's conduct. See *id.* Great American's ineptitude shows in its having submitted no facts indicating detrimental reliance. It did assert detrimental reliance in arguing estoppel, however, and CCC chose not to criticize this argument on grounds of lack of evidence. The parties keep making beds in which they alone would choose to lie. The court will thus deny CCC's motion for summary judgment on Counts 3–4 contingent on Great American's filing of materials suitable for consideration under Rule 56 supporting its assertion of detrimental reliance. *Failure to submit this evidence will result in entry of summary judgment in favor of CCC on Counts 3–4 of CCC's Second Amended Complaint.*