CONTINENTAL CASUALTY COMPANY, an Illinois corporation, in its own right and as subrogee of Edward C. Levy Company, a Michigan corporation, Plaintiff,

v.

GREAT AMERICAN INSURANCE COMPANY, Defendant.

No. 86 C 3938.

United States District Court, N.D. Illinois, E.D.

June 4, 1990.

John Kuhn, Brinton & Bollinger, Chicago, Ill., for plaintiff.

William V. Johnson, Johnson, Cusack & Bell, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The parties to this action have entered its penultimate round. See *Continental Cas. Co. v. Great American Ins. Co.*, 732 F.Supp. 929, 930–31 (N.D.Ill.1990) (*"Continental Cas. II"*) (describing Rounds One through Four). Before the court are two motions. One is from Great American Insurance Company for reconsideration of part of this court's opinion of April 27, 1989, reported as *Continental Cas. Co. v. Great American Ins. Co.*, 711 F.Supp. 1475 (N.D.Ill.1989) (*"Continental Cas. I"*). The other is a renewed motion for partial summary judgment from Continental Casualty Company ("CCC").[1]

*Great American's Motion for Reconsideration*

In *Continental Cas. I*, this court ruled among other things that while Great American was not obliged under Michigan law to tender the limit of an employer's liability policy which it had with Edward C. Levy Company, it should have tendered both its bodily injury and contractual bodily injury coverages to Levy. Great American tendered the latter, but not the former. See *id.* at 1482.

■ The court rooted its decision solely in Michigan law. The court noted the general rule under that law that an insured can recover under multiple endorsements of an insurance policy as long as (1) the endorsements are separate, (2) they carry separate premiums, and (3) the parties have not contracted to the contrary. See *id.* at 1483; see also *id.* at 1482 (describing Michi-

gan law on "stacking" of coverages). Great American did not direct the court to any provision in its policy barring multiple recoveries, and so the court concluded that Great American had to tender both coverages to Levy under Michigan law. The court suggested, however, that the issue may not have been a crucial one to Great American. At the time of its ruling, CCC had accused Great American only of a breach of its duty of good faith towards CCC, not breach of its insurance contract with Levy. Great American insisted in opposing CCC's "stacking" argument that it had acted in good faith in refusing to stack its coverages, and so Great American was able to escape summary judgment in *Continental Cas. I* regardless of the court's view of Great American's obligations to Levy. See *id.* at 1480 (describing bad faith under Michigan law); *id.* at 1482 (explaining why CCC could not obtain summary judgment); *id.* at 1484 (suggesting how posture of case made court's view of Great American's obligations to Levy unimportant).

As this court explained in *Continental Cas. II*, CCC saw in *Continental Cas. I* an opportunity to press a new theory of Great American's liability to CCC: breach of contract. CCC amended its complaint, then moved for summary judgment on its new theory. CCC invoked *Continental Cas. I* as authority for how Great American breached its contract toward Levy. CCC argued that it was Levy's subrogee, and so CCC asked the court for judgment in its favor. See *Continental Cas. II*, 732 F.Supp. at 931.

Realizing that *Continental Cas. I* was a danger, Great American asked the court on January 11, 1990, "to clarify or modify" *Continental Cas. I* with respect to its discussion of the stacking of coverages under Michigan law. While Great American failed to invoke a specific rule in presenting its motion, the court explained to the parties in open court that Rule 54(b), Fed.R. Civ.Proc., allowed a party to seek reconsid-

---

1. The court assumes that the reader is familiar with the facts of this case, as presented in *Continental Cas. I* and *Continental Cas. II*.

eration of any order granting partial summary judgment at any time for good cause. See also *Continental Cas. II*, 732 F.Supp. at 931–32 (describing power to reconsider grant of partial summary judgment). Nevertheless, the court denied Great American's motion for clarification and modification, for two reasons. First, Great American did not give sufficient cause for seeking reconsideration so long after the court's ruling in *Continental Cas. I*, and presenting numerous new arguments which Great American had not raised earlier. Second, briefing on CCC's new motion for partial summary judgment was underway; the court suggested to Great American that it could use its response to this motion as a vehicle to seek reconsideration of the objectionable aspects of *Continental Cas. I*.

Great American filed its response to CCC's motion for partial summary judgment on the same day on which it had moved for clarification. In that response, Great American did not challenge the court's discussion of stacking in *Continental Cas. I*, although the company took note of that discussion. See Response of Defendant Great American Insurance Company to Plaintiff's Motion for Summary Judgment 3 (January 11, 1990). Instead, Great American made five arguments in opposing CCC's motion: (1) the court had not previously decided if Great American had to reimburse CCC, (2) CCC's excess policy denied the existence of double coverage by Great American, (3) CCC had waived any claim for the policy limit which Great American had not tendered to Levy, (4) CCC was not entitled to be Levy's equitable subrogee under Michigan law, and (5) Great American and Levy did not intend to benefit CCC by their contract. The court noted Great American's failure to challenge *Continental Cas. I*'s view of the stacking issue in ruling on CCC's motion for partial summary judgment. See *Continental Cas. II*, 732 F.Supp. at 932.

■ Great American now asks the court once again to reconsider *Continental Cas. I*'s view of the stacking issue. The court declines for the same reasons it denied Great American's motion in January. First, the motion is untimely. Great American fails to offer now, as it failed to offer in January, an excuse as to why it waited through (1) CCC's abortive motion for summary judgment, which should have alerted Great American to the stacking issue, (2) CCC's amendment of its complaint, an amendment brought solely to take advantage of Michigan's law on stacking, and (3) CCC's motion for summary judgment before seeking reconsideration. The present circumstances are even worse for Great American, as the company skipped a final opportunity to reopen the stacking issue in its response to CCC's motion for summary judgment. Second, Great American has not explained why it should be able to raise several new arguments which it did not raise before on the stacking issue. The court owes it to CCC in deciding Great American's motion to ascertain that Great American has not intentionally held back legal theories from the court, examined the results of the court's rulings, then come forward later with materials warranting reversal. See *Anderson v. Montgomery Ward & Co., Inc.*, 704 F.Supp. 162, 163 (N.D.Ill.1989). Great American's motion gives no reason why it has acted so tardily. The court thus denies Great American's motion for reconsideration.[2]

**2.** Even if the court were to address the substance of Great American's motion, the court would adhere to its original decision. First, Great American is under the mistaken impression that the court reached its conclusion in *Continental Cas. I* as to the stacking of Great American's coverages on account of Great American's forfeit on the issue. To the contrary, Great American did not "punt" on the issue of stacking; rather, it failed to persuade the court as to the proper Michigan law. Second, Great American argues that there is a material issue of fact as to the stacking of coverages,

as its attorneys and advisers thought that coverages would not stack. Under Michigan law, however, interpretation of an insurance contract is a matter of law, not fact. The court's duty is to construe the language of the contract in a reasonable manner and give effect to its terms. See *Michigan Mut. Ins. Co. v. Sunstrum*, 111 Mich.App. 98, 315 N.W.2d 154 (1981); *Farm Bureau Mut. Ins. Co. v. Hoag*, 136 Mich.App. 326, 356 N.W.2d 630 (1984). The court determined in *Continental Cas. I* that a Michigan court would interpret the language of Great

*CCC's Renewed Motion for Summary Judgment*

In *Continental Cas. II,* this court denied CCC's motion for summary judgment on Counts 3–4 of its Second Amended Complaint. While CCC was able to make out a prima facie case that Great American breached its insurance contract with Levy, and that CCC could recover for breach of contract as Levy's subrogee, the court determined that Great American had raised a genuine issue of material fact as to whether CCC had waived its contractual claims under Michigan law. The court pointed out, however, that in order for Great American to establish estoppel of CCC by waiver, Great American would have to show detrimental reliance on CCC's conduct. The court ordered Great American to submit evidence showing such detrimental reliance. See *Continental Cas. II,* 732 F.Supp. at 933 & n. 2.

■■■ Before turning to the evidence which Great American has submitted in support of its estoppel argument, the court must acknowledge error in its characterization of Great American's remaining defenses against CCC. Great American has not asserted "estoppel by waiver"; rather, Great American has asserted separate defenses of waiver and estoppel. The defenses are distinct under Michigan law. See *Commercial Union Ins. v. Medical Protective,* 136 Mich.App. 412, 419–23, 356 N.W.2d 648, 652–53 (1984) (treating defenses separately), aff'd in pertinent part, 426 Mich. 109, 393 N.W.2d 479 (1986). See also 28 Am.Jur.2d Estoppel and Waiver § 30 (1966) (discussing distinction). To establish waiver of a right, one must demonstrate that the person alleged to have done so has intentionally and knowingly relinquished it. See *Medical Protective,* 356 N.W.2d at 653. The party which claims waiver need not show that it relied on the waiver to its detriment. See 28 Am.Jur.2d Estoppel and Waiver § 30. By contrast, "to justify the application of estoppel, one must establish that there has been a false representation

or concealment of material fact, coupled with an expectation that the other party will rely upon this conduct, and knowledge of the actual facts on the part of the representing or concealing party." *Lothian v. City of Detroit,* 414 Mich. 160, 324 N.W.2d 9, 18 (1982). The party claiming estoppel also must show that he or she lacked knowledge of the truth or means of learning it, and actually relied on the other party's conduct to his or her detriment. See *Cudahy Bros. Co. v. West Michigan Dock & Market Corp.,* 285 Mich. 18, 280 N.W. 93 (1938); *National Bank of Rochester v. Meadowbrook Heights, Inc.,* 80 Mich.App. 777, 265 N.W.2d 43 (1978); *Starboard Tack Corp. v. Meister,* 103 Mich. App. 557, 303 N.W.2d 38 (1981); see generally 28 Am.Jur.2d Estoppel and Waiver § 35.

Applying this law to this case, it is clear that regardless of its ability to show detrimental reliance, Great American has raised a valid defense of waiver that must be tried. The court thus must deny CCC's renewed motion for summary judgment on Counts 3–4 of its Second Amended Complaint.

■■■ Since this case will go to trial, the court believes that it is proper to consider whether Great American also has raised a valid defense of estoppel under Michigan law. In accordance with the court's direction, Great American has submitted an affidavit from its Corporate Claims Counsel, James Danehy, that CCC never advised Great American before 1986 of its claim that Great American owed Levy two coverages instead of one. Danehy swears further that had CCC so advised Great American of the double coverages, Great American would have settled Ford Motor Company's suit against Levy sooner, and avoided the present litigation altogether. Great American also has tendered an affidavit from Joseph P. Aubin, formerly a regional claims manager for Great American. Aubin testifies that he set Great American's reserves in mid–1984 at $750,000, presumably in reliance on CCC's failure to put Great American's liability to Levy at an

American's policy so as to stack coverages. While Great American is free to disagree with this court's analysis of Michigan law, that disagreement of *law* does not raise a genuine issue of material *fact* with respect to its liability for breach of its insurance contract with Levy.

amount higher than $1 million. Aubin also states that prior to February 1984, he could not get CCC to describe its position in the *Ford v. Levy* lawsuit.

These facts do not make out a defense of estoppel under Michigan law.[3] First, Great American has put forth no evidence that CCC misled Great American about facts. At worst, CCC reinterpreted Great American's insurance contract, but an interpretation of a contract is an opinion, not a fact. Second, even if an interpretation were a fact, during the time when CCC manifested a different interpretation of Great American's policy than it has now, Great American had the means of interpreting its own policy. It is undisputed that Great American drafted its policy and had lawyers who were able to interpret that language. While Great American may have a right to have counted on CCC's waiver of its right to assert a different interpretation of Great American's policy, Great American may not assert that it justifiably relied on the prior interpretation itself.

## CONCLUSION

The court denies Great American's motion to reconsider its order of April 27, 1989. The court denies CCC's renewed motion for summary judgment on Counts 3–4 of the Second Amended Complaint.

---

**3.** CCC disputes the facts as well, but this court may not resolve factual disputes on a motion for summary judgment.